**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID KARLING, individually and on behalf
of all others similarly situated

               Plaintiff,

     v.

SAMSARA, INC., a Delaware
Corporation,

               Defendant.

Case No. 1:22-cv-00295

Hon. Sara L. Ellis

**<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

2388548.7

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. RELEVANT FACTUAL ALLEGATIONS ...................................................................... 2

III. LEGAL STANDARD ................................................................................................... 2

IV. ARGUMENT ............................................................................................................... 3

    A. Samsara's arguments are improper at this stage of litigation. .............................. 3

    B. Plaintiff's claims are not preempted. ................................................................... 4

        1. There is no "uniform scheme of federal regulation." ............................... 5

        2. BIPA does not foreclose "federal encouragement." .................................. 7

        3. BIPA does not conflict with federal law or regulation. ............................ 8

        4. Courts in this District have rejected similar preemption arguments.......... 8

    C. Applying BIPA to Samsara does not violate the Dormant Commerce Clause. ......................................................................................................... 11

    D. Plaintiff has properly stated all of his BIPA claims against Samsara. ................ 12

        1. Plaintiff stated a claim under Section 15(a) of BIPA. ............................. 12

        2. Plaintiff stated a claim under BIPA Section 15(b)................................... 14

        3. Plaintiff stated a claim under BIPA Section 15(c)................................... 16

        4. Plaintiff stated a claim under BIPA Section 15(d)................................... 17

        5. Plaintiff plausibly alleged Samsara's intentional or reckless BIPA violation. ....................................................................................... 18

V. CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Fed. of Govt. Empls. v. Rumsfeld*,
262 F.3d 649 (7th Cir. 2001) ................................................................. 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 2

*Aux Sable, Liquid Products v. Murphy*,
526 F.3d 1028 (7th Cir. 2008) ..................................................... 4, 6, 7, 8

*Bausch v. Stryker Corp.*,
630 F.3d 546 (7th Cir. 2010) ................................................................. 3

*Bernal v. ADP, LLC*,
2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) ................................ 14, 16

*Bibb v. Navajo Freight Lines, Inc.*,
359 U.S. 520 (1959) ............................................................................. 11

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ................................................................. 3

*Christensen v. Harris Cty.*,
529 U.S. 576 (2000) .............................................................................. 5

*City of Chicago v. DoorDash, Inc.*,
2022 WL 704837 (N.D. Ill. Mar. 9, 2022) .............................................. 2

*Costello v. BeavEx, Inc.*,
810 F.3d 1045 (7th Cir. 2016) ............................................................... 8

*Cothron v. White Castle System, Inc.*,
467 F. Supp. 3d 604 (N.D. Ill. 2020) ................................................... 17

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .............................................................................. 4

*Crumpton v. Octapharma Plasma, Inc.*,
513 F. Supp. 3d 1006 (N.D. Ill. 2021) ................................................ 8, 9

*CSX Tranp., Inc. v. Easterwood*,
507 U.S. 658 (1993) .............................................................................. 4

*Figueroa v. Kronos, Inc.*,
454 F. Supp. 3d 772 (N.D. Ill. 2020) ............................... 14, 15, 16, 17

*Fleury v. Union Pacific Railroad Co.*,
528 F. Supp. 3d 885 (N.D. Ill. 2021) ................................................ 9, 10

2388548.7

# TABLE OF AUTHORITIES
## (continued)

Page

*Flores v. Motorola Solutions, Inc.*,
2021 WL 232627 (N.D. Ill. Jan. 8, 2021) ............................................................. 16

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995) ............................................................................................... 8

*Geier v. Am. Honda Motor Corp.*,
529 U.S. 861 (2000) ........................................................................................... 7, 8

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012) ................................................................................. 3

*Heard v. Becton, Dickinson & Co.*,
524 F. Supp. 3d 831 (N.D. Ill. 2021) ................................................................... 15

*Jacobs v. Hanwha Techwin Am. Inc.*,
2021 WL 3172967 (N.D. Ill. July 27, 2021) ......................................................... 18

*Laverty v. Smith & Nephew, Inc.*,
197 F. Supp. 3d 1026 (N.D. Ill. 2016) ................................................................... 4

*Monroy v. Shutterfly, Inc.*,
2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ................................................. 11, 12

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ................................................................... 14

*Neals v. PAR Tech. Corp.*,
419 F. Supp. 3d 1088 (N.D. Ill. 2019) ........................................................... 15, 18

*Nova Design Build, Inc. v. Grace Hotels, LLC*,
2008 WL 4450305 (N.D. Ill. Sept. 30, 2008) ........................................................ 3

*Owner-Operator Ind. Drivers Ass'n v. U.S. Dep't of Transp.*,
840 F.3d 879 (7th Cir. 2016) ................................................................................. 8

*Peatry v. Bimbo Bakeries USA, Inc.*,
2020 WL 919202 (N.D. Ill. Feb. 26, 2020) .......................................................... 18

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ................................................................. 11

*Rogers v. BNSF Railway Co.*,
2019 WL 5635180 (N.D. Ill. Oct. 31, 2019) ............................................... 9, 10, 18

*Smith v. CSX Transp., Inc.*,
247 F. Supp. 3d 952 (N.D. Ill. 2017) ..................................................................... 4

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ................................................................................. 2

## TABLE OF AUTHORITIES
### (continued)

Page

*Vance v. Int'l Business Machines Corp.*,
 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) .......................................................... 11

*Vance v. Microsoft Corp.*,
 534 F. Supp. 3d 1301 (W.D. Wash. 2021)......................................................... 16, 17

*Zimmerman v. Bornick*,
 25 F.4th 491 (7th Cir. 2022) ................................................................................. 14

**Statutes**

15 U.S.C. § 1392(d) ........................................................................................................ 7

49 U.S.C. § 10501(b) ..................................................................................................... 10

49 U.S.C. § 31114 ........................................................................................................... 7

49 U.S.C. § 31137(a)(2) ................................................................................................. 8

49 U.S.C. § 31137(d)(2) ................................................................................................. 8

49 U.S.C. § 31308(3) ....................................................................................................... 7

740 ILCS 14 *et seq.* ........................................................................................................ 1

740 ILCS 14/15(a) .................................................................................................. 12, 13

740 ILCS 14/15(b) ........................................................................................................... 7

740 ILCS 14/15(b)(1)-(3) ............................................................................................. 14

740 ILCS 14/15(c) ......................................................................................................... 16

740 ILCS 14/5(a) ............................................................................................................. 6

**Other Authorities**

Pub. L. No. 117-58, § 23006............................................................................................. 5

Pub. L. No. 117-58, § 24209............................................................................................. 6

Pub. L. No. 117-58, § 24209(c)(2)................................................................................... 5

**Regulations**

49 C.F.R. § 395.22(e)....................................................................................................... 6

## I.    <u>INTRODUCTION</u>

Defendant Samsara Inc.'s motion to dismiss should be denied in all respects. The motion is primarily a series of unsupported assertions about various doomsday scenarios if the company must comply with the Illinois Biometric Privacy Information Act, 740 ILCS 14 *et seq.* ("BIPA"). Attorney speculation about public policy is not a basis for a motion to dismiss. That general rule is particularly true in this case, where Samsara does not meaningfully connect that speculation to any principle of law that would bar this litigation.

Samsara first speculates that Plaintiff's case is preempted. But Samsara does not point to a federal statute or regulation that conflicts with BIPA. Samsara points at most to a Privacy Impact Assessment from the Department of Transportation ("DOT") that mentions the potential use of biometrics. The Privacy Impact Assessment does not preempt anything, and there is no tension (much less actual conflict) between the DOT observing that companies sometimes collect biometric information and state law. BIPA does not forbid the collection of biometrics; it merely regulates how biometrics can be connected. Other district courts have rejected the very same arguments that Samsara proffers here.

Second, Samsara's Dormant Commerce Clause argument is premature and relies wholly on unsupported assertions of burden. Plaintiff's proposed class consists entirely of individuals harmed while in Illinois and therefore does not violate the Dormant Commerce Clause.

Finally, Plaintiff stated a claim under each asserted prong of BIPA. Of particular relevance, because Plaintiff pled that Samsara made no effort to comply with BIPA—certainly, the motion to dismiss seems to *agree* with this proposition—he has properly alleged that Samsara intentionally or recklessly violated BIPA.

Plaintiff respectfully asks this Court to deny Samsara's motion to dismiss.

## II.   **RELEVANT FACTUAL ALLEGATIONS**

Samsara collected facial geometry—biometric information and biometric identifiers—from Plaintiff David Karling and proposed Class Members without their consent. Dkt. 1-1 ("Compl.") ¶¶ 38-48.[1] Samsara sells and equips commercial freight truck companies with its driver monitoring system, the "AI Dash Cam." *Id.* at ¶¶ 20-21. This system points a camera on drivers' faces, like Plaintiff's, and uses "advanced machine learning" to monitor drivers' faces and focus on whether they are engaging in certain behaviors. *Id.* at ¶ 21. Samsara transmits its footage to its Cloud Dashboard where its customers, freight truck companies like Plaintiff's employer, can monitor their drivers. Samsara's website admits that its technology "will begin automatically recognizing and assigning [driver's] names with their faces with high accuracy." *Id.* at ¶ 24.

Plaintiff never consented to Samsara's biometric collection, was never provided with BIPA's requisite statutory disclosures, and never had an opportunity to stop the collection of his unique biometric identifiers or biometric information. *Id.* at ¶¶ 43-45.

## III.   **LEGAL STANDARD**

On a motion to dismiss, courts consider only the allegations within the four corners of the complaint. *See City of Chicago v. DoorDash, Inc.*, 2022 WL 704837, at *4 (N.D. Ill. Mar. 9, 2022) (Gettleman, J.) (citing *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014)). That complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Pleadings do not, however, need to "anticipate or attempt to circumvent affirmative defenses"

---

[1] Specifically, Samsara collected, captured, used, transmitted, disseminated, and stored biometric information and biometric identifiers from Plaintiff and proposed Class Members while they were present in the State of Illinois. Compl. at ¶¶ 38-48.

such as "preemption." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). Indeed, "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

## IV.   ARGUMENT

Samsara argues that "claims like Plaintiff's claim will discourage Samsara and other technology providers" nationwide. Mot. at 9. It argues that it is unreasonable to require a national company like Samsara to comply with BIPA in the State of Illinois because it would "absurdly" have to prevent its "customers from using Samsara technology while driving in Illinois due to risk of noncompliance." *Id.* at 12. Such arguments have no place in federal court—they should be directed only at Springfield. They are not well-taken on a motion to dismiss, moreover, because they are Samsara's speculation about what a factual record would show and have nothing to do with the pleadings. *See Nova Design Build, Inc. v. Grace Hotels, LLC*, 2008 WL 4450305, at *3 (N.D. Ill. Sept. 30, 2008) (rejecting defendant's premature arguments based "on various facts that are well beyond the scope of the complaint and attached exhibits"). The limited arguments that Samsara makes about the actual complaint are also unavailing.

### A.   Samsara's arguments are improper at this stage of litigation.

The overwhelming majority of Samsara's arguments are beyond the scope of a Rule 12(b)(6) motion, and the Court should not consider them. This is because "[a] motion under Rule 12(b)(6) can be based only on the complaint itself . . . and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).[2] Samsara's preemption arguments are thus premature because preemption should be adjudicated on a factual

---

[2] Samsara's "evidentiary" citations fare no better. For example, the Court should discard what Samsara says are facts from a trucker's advocacy group (the American Trucking Association), particularly because it provided no detail about the source of its "statistics." *Cf.* Mot. at 2 n.1.

record. *See, e.g., Smith v. CSX Transp., Inc.*, 247 F. Supp. 3d 952, 956 (N.D. Ill. 2017) ("[T]he scope of ICCTA preemption depends on the factual circumstances of the claim."); *Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026, 1029 (N.D. Ill. 2016) ("Preemption is an affirmative defense, and pleadings need not anticipate or attempt to circumvent affirmative defenses." (citation omitted)).

### B. Plaintiff's claims are not preempted.

Plaintiff's BIPA claims are not preempted by federal law. Indeed, Samsara does not attempt to identify any actual conflict between federal law and BIPA, and Plaintiff knows of none. Samsara's motion spends ten pages jumping to and from different regulations and agencies responsible for interstate freight transportation, but it fails to answer the fundamental question in a preemption analysis: which federal law and state laws purportedly conflict.[3] And "[t]o determine whether state and federal law are in conflict, it is necessary to 'examine the federal statute as a whole and identify its purpose and intended effects.'" *Aux Sable*, 526 F.3d at 1034 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)). Samsara's failure to identify a specific statute that conflicts with BIPA is dispositive because its attempt to stitch together a patchwork of federal laws, regulations, and non-binding "safety strategy" documents as a "uniform scheme of federal regulation of truck safety technologies" is unpersuasive. Mot. at 7. There is no preemption absent "the clear and manifest purpose of Congress." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993) (internal citation omitted).

---

[3] Samsara does not appear to be arguing that there is express or field preemption. *See Aux Sable, Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) ("Preemption can take on three different forms: express preemption, field preemption, and conflict preemption.").

**1.    There is no "uniform scheme of federal regulation."**

Because it cannot point to any specific federal law or laws that conflict with BIPA, Samsara cites a bevy of laws and regulations to make the unsupported claim that there is a "uniform scheme of federal regulation of truck safety technologies." Mot. at 7. Samsara's citations do not support such a bold claim.

First, Samsara cites to the existence of relevant federal agencies interested in trucking safety, Mot. at 2-3, and a "National Roadway Safety Strategy" paper recently published by the DOT. *Id.* at 3. The existence of federal agencies interested in trucking safety is of no moment. The paper, moreover, is not a binding regulation or law; rather, it purports to convey the DOT's "inten[t] to take significant action over the next few years."[4] *Cf. Am. Fed. of Govt. Empls. v. Rumsfeld*, 262 F.3d 649, 656 (7th Cir. 2001) (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000)) ("[I]nformal agency interpretations such as those contained in 'opinion letters . . . policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant *Chevron*-style deference.'"). And general statements about "incentivizing the inclusion of technologies in new motor vehicles" do not conflict with BIPA at all. Mot. at 3.

Next, Samsara cites the recently passed Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, §§ 23006, 24209(c)(2), which calls for, "not later than 3 years after the date of enactment," the Secretary of the DOT to "conduct research" into "driver distraction," "driver disengagement," "automation complacency by drivers," and "foreseeable misuse of advanced driver-assist systems" and in doing so "incorporate appropriate privacy and data security

---

[4] *National Roadway Safety Strategy*, U.S. Dep't of Trans. 15-16, at 31 (Jan. 2022), https://www.transportation.gov/sites/dot.gov/files/2022-02/USDOT-National-Roadway-Safety-Strategy.pdf.

safeguards." *Id.* at § 24209. This forthcoming research does not conflict with BIPA or evidence a uniform scheme.

Finally, Samsara points to a DOT rule on "electronic logging devices" ("ELDs") requiring drivers to "log into the ELD system using their proper identification data," 49 C.F.R. § 395.22(e), and a related Privacy Impact Assessment stating that, as an alternative to logging in with a username/password, drivers "may use other means (such as a smart card or a biometric reader) that uniquely identifies the driver to the ELD."[5] This Privacy Impact Assessment, which at most does not foreclose the use of biometrics, is not a "scheme," and BIPA does not foreclose the use of biometrics. In fact, BIPA's statutory findings acknowledge that "the use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings." 740 ILCS 14/5(a).

Samsara's primary case is not to the contrary. *See Aux Sable*, 526 F.3d at 1033. Samsara relies on *Aux Sable* for the proposition that Congress meant to "create uniform standards for commercial motor vehicles." Mot. at 7. But Samsara truncated the relevant quote in a way that misreads the case, which held that "Congress's primary objective in *passing the STAA* was to create uniform standards for commercial motor vehicles utilizing the Interstate and other federal highways." *Aux Sable*, 526 F.3d at 1036 (emphasis added). The Surface Transportation Assistance Act ("STAA") is not at issue in this litigation. And the STAA is a radically different statute than any of those purportedly relevant here because the STAA has express preemption language mandating that: "[a] State may not enact or enforce a law denying to a commercial

---

[5] U.S Dep't of Transp., Privacy Impact Assessment, Federal Motor Carrier Safety Administration Electronic Logging Devices Final Rule, at 19 (2015), available at https://www.transportation.gov/sites/dot.gov/files/docs/Privacy%20-%20FMCSA%20-%20ELD%20-%20PIA%20-%20Approved%20-%20121615.pdf.

motor vehicle … reasonable access [to the Interstate Highway]." *Aux Sable*, 526 F.3d at 1033

(citing STAA, 49 U.S.C. § 31114). *Samsara cites no equivalent preemption language in any of*

*the federal regulations or laws it relies on.*[6]

### 2. BIPA does not foreclose "federal encouragement."

Samara next argues that BIPA somehow conflicts with "federal encouragement" of

biometric safety devices. This argument fails because Samsara cannot point to an actual federal

law[7] with "driver safety" mechanisms or explain how they conflict with BIPA—it simply points

back to the Privacy Assessment Statement and the non-binding "National Roadway Safety

Strategy" paper. Mot. at 9.

Further, *Geier v. Am. Honda Motor Corp.* is not to the contrary. 529 U.S. 861, 867

(2000). The statute at issue there contained clear pre-emption language: "Whenever a Federal

motor vehicle safety standard established under this subchapter is in effect, no State or political

subdivision of a State shall have any authority either to establish, or to continue in effect, with

respect to any motor vehicle . . . any safety standard applicable to the same aspect of

performance of such vehicle . . . which is not identical to the Federal standard." *Id.* (citing 15

U.S.C. § 1392(d)). Relevant to the Supreme Court's analysis was the fact that the "pre-emption

---

[6] The Seventh Circuit in *Aux Sable* also determined that the state law at issue—setting a weight limit on trucks—effectively denied "all methods of access to the Interstate," a clear conflict with 49 U.S.C. § 31114. *Id.* at 1037. Here, BIPA does not foreclose the use of biometrics, but requires informed written consent and a release from the individuals whose biometric information is being collected. 740 ILCS 14/15(b).

[7] Samsara's citation to support the proposition that "Congress and federal agencies encourag[e] the use of biometric technology in interstate trucking safety" is inapposite. Mot. at 9, n.16. *First*, 49 U.S.C. § 31308(3) relates to commercial drivers' license applications, not interstate trucking safety. *Second*, Samsara cites a proposed FMCSA rule that was withdrawn and relates to commercial drivers' licenses. https://www.fmcsa.dot.gov/regulations/rulemaking/05-9171. *Third*, the TSA's Transportation Worker Identification Card relates to TSA worker applications, not interstate truck safety. *Fourth*, the TSA biometric pilot programs and research relate to the use of biometrics in airport security screenings.

provision itself reflects a desire to subject the industry to a single, uniform set of federal safety standards." *Id.* at 871. Samsara cannot point to any equivalent statutory language. At best, it points to a single sentence, in a Privacy Impact Assessment, that permits collecting biometrics (like BIPA does) for a single purpose—drivers logging on and off to work.

### 3.      BIPA does not conflict with federal law or regulation.

The "touchstone of preemption analysis is the intent of Congress." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). Conflict preemption applies "if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Aux Sable*, 526 F.3d at 1033 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). Nowhere does Samsara argue that it would be impossible to comply with both BIPA and the federal requirements that it claims are on point.

Samsara's "obstacle" argument fares no better. At most, Samsara argues that federal transportation agencies "considered potential privacy concerns related to the use of ELDs" and permitted biometric identification as one option. Mot. at 9-10 (citing 49 U.S.C. §§ 31137(a)(2) & (d)(2)). Its citation to *Owner-Operator Ind. Drivers Ass'n v. U.S. Dep't of Transp.*, 840 F.3d 879, 888 (7th Cir. 2016) stands for nothing more than the fact that the DOT issued a final rule where it considered "drivers' privacy" as part of the requirements for ELDs. Samsara does not cite anything in the final DOT rule stating an intention to preempt or supplant state law. Instead, it concocts a "careful balancing test" out of whole cloth and argues that BIPA would somehow be an obstacle. Mot. at 10.

### 4.      Courts in this District have rejected similar preemption arguments.

Other courts in this District have rejected preemption arguments on this basis. In *Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006, 1013 (N.D. Ill. 2021), Judge

Kendall denied a conflict preemption argument where the defendant "points to no federal statute or regulation incompatible with simultaneous compliance with BIPA." Judge Kendall noted that "BIPA applies only when an entity collects biometric information; the [Food, Drug, and Cosmetics Act] does not require Octapharma to collect or use biometric information." *Id.* And the mere fact that the FDCA mentioned the use of biometrics as one method to collect identifying information, same as the Privacy Impact Assessment that Samsara relies on, was of no moment because "although the FDCA does require screening procedures for identity, it does not prescribe an exclusive or preferred method." *Id.*

Other cases are in accord with *Crumpton*. In *Rogers v. BNSF Railway Company*, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019) and *Fleury v. Union Pacific Railroad Company*, 528 F. Supp. 3d 885 (N.D. Ill. 2021), Judge Kennelly and Judge Alonso rejected arguments that BIPA was preempted by the Federal Railroad Safety Act and the Interstate Commerce Commission Termination Act ("ICCTA"). In each case, plaintiffs sued because, as truck drivers visiting a railyard, they were required to scan a biometric identifier. *Rogers*, 2019 WL 5635180, at *1; *Fleury*, 528 F. Supp. 3d at 888.

In analyzing the ambit of BIPA, the *Fleury* court explained: "BIPA was enacted to protect individuals from certain irreparable harms arising from the use of their biometric information by imposing notice and consent requirements and standards for collection, storage, and use of biometric information." 528 F. Supp. 3d at 892. In relevant part, the Court explained:

> [T]he safety or security concerns BIPA addresses are the potential harms inflicted on members of the public, such as identity theft and economic injures, that flow from the unfettered collection and use of biometric information. At a more general level, then, BIPA's subject matter is *how* biometric information is collected and used . . . . BIPA addresses the security concern of how an individual's biometric information is collected and used, *not why it is collected*.

*Id.* at 892-93 (emphasis added) (citations omitted). This last point is critical. Samsara's arguments relate wholly to *why* biometric information is collected under the federal regulations they cite. BIPA does not prevent companies from collecting biometric information: BIPA is focused on *how* collection takes place.

With this key distinction in mind, the *Rogers* and *Fleury* courts rejected defendant's preemption arguments. They did so notwithstanding statutory language, not present here, in the ICCTA providing that "the jurisdiction of the [Surface Transportation] Board over (1) transportation by rail carriers . . . is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Rogers*, 2019 WL 5635180, at *2 (citing 49 U.S.C. § 10501(b)). The Court noted that "any impact of the BIPA's disclosure, consent, and recordkeeping requirements on [defendant's] rail transportation operations is—on the present record at least—not just indirect but also highly speculative." *Id.* at *3.

Likewise, the *Fleury* court did not view BIPA as a "regulation of rail transportation," despite the breadth of that term as defined in the ICCTA, because "BIPA imposes no restrictions on the movement of property by rail nor on the receipt of property at railroad facilities. 'Rather it imposes disclosure, consent, and recordkeeping requirements related . . . certain types of information.'" *Fleury*, 528 F. Supp. 3d at 895 (quoting *Rogers*, 2019 WL 5635180, at *2). Samsara's arguments fail for the same reason. Its insistence that BIPA conflicts with the "uniform scheme of federal regulation of truck safety technologies" misconstrues what BIPA actually does. BIPA has no bearing on truck safety, just as BIPA imposes no restrictions on the

movement of property by rail. Accordingly, the Court should reject Samsara's preemption arguments.

**C.**     **Applying BIPA to Samsara does not violate the Dormant Commerce Clause.**

Samsara's Dormant Commerce Clause argument, like its preemption argument, is inappropriate on a motion to dismiss. "[C]ourts have repeatedly rejected the argument that the Dormant Commerce Clause prevents BIPA's application to out-of-state defendants at the motion to dismiss stage and held that the issue is more properly addressed on a motion for summary judgment." *Vance v. Int'l Business Machines Corp.*, 2020 WL 5530134, at *4 (N.D. Ill. Sept. 15, 2020) (citing cases). As another court in this District stated, "the Illinois Biometric Information Privacy Act was not intended to and does not have extraterritorial application. Whether the Privacy Act is nevertheless being summoned here to control commercial conduct wholly outside Illinois is not possible to figure out without a better factual understanding[.]" *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017).

Samsara's entire Dormant Commerce Clause argument boils down to the unsupported assertion that it "would place a 'great burden' on interstate motor carriers and their technology providers and would substantially interfere with interstate commerce." Mot. at 12 (citing *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 530 (1959)). This assertion is inappropriate on a motion to dismiss and should be denied. *See Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *8 (N.D. Ill. Sept. 15, 2017) (on motion to dismiss "court has no basis for concluding that applying BIPA in this case would entail control over out-of-state conduct in a way that would run afoul of the dormant commerce clause").

Even if the Court were to accept Samsara's premature and unsupported arguments as true, its argument still fails. Plaintiff and the proposed Class Members are alleging harm for actions that take place in the State of Illinois. Compl. ¶ 48. Other cases in this District have

rejected Dormant Commerce Clause arguments where the proposed class consists only of individuals harmed by actions within Illinois. *See, e.g.*, *Monroy*, 2017 WL 4099846, at *7 ("Monroy's suit, as well as his proposed class, is confined to individuals whose biometric data was obtained from photographs uploaded to Shutterfly in Illinois."). In *Monroy*, the court noted the distinction between requirements that defendant needed to comply with if it wishes to operate in Illinois and controlling its conduct in other states. *Id.* Here, BIPA applies to out-of-state companies only when they are violating Illinois law within Illinois. Samsara does not contend otherwise.[8]

      **D.**     **Plaintiff has properly stated all of his BIPA claims against Samsara.**

Plaintiff has stated a claim under each relevant prong of BIPA.

      **1.**     **Plaintiff stated a claim under Section 15(a) of BIPA.**

Section 15(a) of BIPA required Samsara to have a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied." 740 ILCS 14/15(a). Samsara argues that it meets the statutory requirements through language on its website that it: "keeps facial recognition information . . . for a customer no longer than necessary to provide its Camera ID service to that customer. To delete facial recognition information stored by Samsara, contact customer support." Dkt. 17-3. This fails to comply with 15(a) in at least three respects because it does not establish: (1) a "retention schedule," (2) "guidelines for permanent destr[uction]," or (3) that any destruction is "permanent." 740 ILCS 14/15(a).

---

[8] And Samsara could, presumably, simply turn off its Dash Cams when drivers entered Illinois and turn them back on when drivers exited Illinois. This is yet another reason why this issue is not properly disposed of at the pleading stage.

First, Samsara does not have a "retention schedule" because the only language regarding timing for retention is "no longer than necessary." Dkt. 17-3. This phrase is so vague as to be meaningless. "Schedule" means "a procedural plan that indicates the time and sequence of each operation." "Schedule," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/schedule, accessed Mar. 28, 2022. Samsara's language does not constitute a retention schedule as that phrase is commonly understood.

Second, Samsara does not provide "guidelines for permanent[] destr[uction]." 740 ILCS 14/15(a). The closest possible "guideline" is again, the vague language, "no longer than necessary to provide its Camera ID service to that customer." Dkt. 17-3. This suggests that the retention of data differs across customers, private trucking companies, and is at the whim of each customer's respective needs. There is no way for the individuals whose biometric information is collected to know whether the guidelines for permanent destruction have been met, because that relies on Samsara's customers' needs which could extend infinitely.

Finally, BIPA requires a company to "permanently destroy" the biometric identifiers. 740 ILCS 14/15(a). Samsara's language suggests the opposite; i.e., that Samsara does *not* "permanently destroy" any biometric information. The first sentence: "Samsara keeps facial recognition for a customer no longer than necessary to provide its Camera ID service to that customer" and second sentence "To delete facial recognition information stored by Samsara, contact customer support" are at odds. Dkt. 17-3. Either Samsara deletes information when it is "no longer" necessary to its customer or Samsara requires individuals who had their information collected to "contact customer support" to have their information deleted. Under either reading, there is no indication that the destruction is *permanent*.

\*       \*       \*

- 13 -

2388548.7

Section 15(a) requires that the written policy explain its "retention schedule" and its "guidelines for permanent" destruction. The clear and appropriate inference from Samsara's "Special Features" page on its website is that it does neither. *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022) ("The cornerstone at the motion to dismiss stage remains for district courts to treat all allegations as true and to draw all reasonable inferences in the plaintiff's favor."). Samsara, moreover, does not allege that this policy, to the extent it complies with Section 15(a), was in force *before* Plaintiff's biometric information was collected.

### 2. Plaintiff stated a claim under BIPA Section 15(b).

Section 15(b) of BIPA required Samsara to inform Plaintiff in writing of: (1) the biometric collection; and (2) the specific purpose and length for which the collection is taken place nor that it got a written release to do so. 740 ILCS 14/15(b)(1)-(3). Samsara did neither.

Samsara's first argument is that only an employer is required to obtain a written release. Mot. at 13-14. This is at odds with the plain language of BIPA and relevant case law, and neither of Samsara's cases support the proposition. In *Bernal v. ADP, LLC*, 2019 WL 5028609, at *1-2 (Ill. Cir. Ct. Aug. 23, 2019), the Court wrote "plaintiff correctly contends that BIPA can be applied outside of an employment situation" and dismissed the claim on other grounds. *Id.* at *1. And *Namuwonge v. Kronos, Inc.* is inapposite because the Court dismissed the Section 15(b) claim because there was no plausible allegation that defendant "collected, captured, or otherwise obtained" Plaintiff's information. 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019).

Courts have not required an employment situation and have sustained claims against "technology providers" like Samsara. In *Figueroa v. Kronos, Inc.*, Judge Feinerman sustained a Section 15(b) claim against Kronos, a timekeeping system used by thousands of Illinois employers. 454 F. Supp. 3d 772, 779 (N.D. Ill. 2020). The Court rejected Kronos's employment argument, the same that Samsara makes here, and stated "when Plaintiffs enrolled in and used

- 14 -

their employers' timekeeping systems, Kronos obtained their biometric data without first informing them or obtaining from them a written release. That is a textbook violation of Section 15(b)." *Id.* at 783. It continued, "even if Kronos's obtaining Plaintiffs' data occurred 'in the context of employment'—as opposed to in the context of a business-to-business relationship between Kronos and their employers—Kronos still was a 'private entity' that 'collected' or 'obtained' Plaintiffs' data, and thus remained obligated to receive a release from them as a condition of their employment." *Id.*; *see also Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 842-43 (N.D. Ill. 2021) (citing *Kronos* for application of 15(b) to third-party vendor and finding *Bernal*'s analysis "cursory and ultimately unpersuasive"); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1092 (N.D. Ill. 2019) (rejecting argument that only employers must obtain consent as having "no support in the text of the statute").

Next, Samsara's argument that it did not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric information fails. Mot. at 14-15. Plaintiff, contrary to Samsara's argument, alleged that Samsara's "'AI Dash Cams transmit their footage to Samsara's Cloud Dashboard which is disclosed to its customers." Compl. ¶ 21. He further alleges that Samsara's technology "will begin automatically recognizing and assigning their names with their faces with high accuracy" and the AI Dash Cam sends and stores the facial geometry data that it captures to Samsara's Cloud Dashboard. *Id.* at ¶¶ 24-25. Each of these allegations goes beyond merely "possessing" the data and supports the argument that Samsara "captured," "collected," "or otherwise obtained" the biometric information. *See Heard*, 524 F. Supp. 3d at 841 (allegation that fingerprints stored on defendant's servers and "data from subsequent scans" was also being

stored on servers "suggest that [defendant] itself plays an active role in collecting or otherwise obtaining users' biometric information from the Pyxis devices.").[9]

### 3.     Plaintiff stated a claim under BIPA Section 15(c).

Section 15(c) states that "no private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Plaintiff alleges that (i) Samsara works with more than 20,000 businesses; (ii) sells, through its contractual relationships, the biometric data it captures on its AI Dash Cam to its customers; and (iii) profits by doing so. Compl. ¶¶ 22-23, 25-26, 30-31, 37. Samsara's AI Dash Cam is wholly reliant on its biometric information to identify who is driving and what behaviors they are engaging in. This is the quintessential Section 15(c) claim, and courts have permitted similar 15(c) allegations to go forward.

In *Flores v. Motorola Solutions, Inc.*, 2021 WL 232627, at *3 (N.D. Ill. Jan. 8, 2021), in a case involving the same defense counsel, Judge Norgle sustained a Section 15(c) claim where defendant maintained a gallery of photographs that it sold to law enforcement clients "via contract or fee." *Id.* at *1 ("Via contract or fee, agencies gain access to Defendants' database and facial search engine."). There, as here, the Court found that "biometric data is a necessary element to Defendant's business model." *Id.* at *3.

The authority that Samsara relies on supports Plaintiff, not Samsara.[10] In *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021), the District Court said that

---

[9] *See also Figueroa*, 454 F. Supp. 3d at 784 ("The complaint alleges that Kronos 'stored,' 'used,' and 'disclosed' Plaintiffs' biometric data and to have done those things Kronos necessarily first had to 'obtain' the data.") (internal citation omitted).

[10] *Bernal*, 2019 WL 5028609, at *2, is inapposite because there were no details in the complaint about the use of biometrics beyond conclusory allegations. Mot. at 16.

Section 15(c) "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value." As to (1), the Court noted "biometric data may be so integrated into a product that consumers necessarily gain access to biometric data by using the product or service." *Id.* In that case, the Court considered whether photographs met that requirement and determined that it did not. *Id.* However, it distinguished its facts from *Flores* where, "without the identified biometric data, there would be no product to speak of." *Id.* at 1309. The same is true here for Samsara's AI Dash Cam—without it, there would be no product. Therefore, Samsara's arguments that Section 15(c) should not be construed to prohibit any profitmaking activity related to biometric technology fails. Mot. at 16.

### 4.      Plaintiff stated a claim under BIPA Section 15(d).

Section 15(d) prohibits disclosure or dissemination of biometric information. Plaintiff has alleged this plausibly: Samsara's entire business model is the collection of biometric information, through its AI Dash Cams, and then the subsequent dissemination of the same, through its cloud servers, to its customers. Compl. ¶¶ 22-23, 25-26, 31-32. Samsara's sole response is that its actions somehow are neither "disclosure" nor "dissemination." Mot. at 17. This should be rejected out of hand: in *Figueroa*, the Court noted that the allegation that "Kronos disseminated Plaintiffs' biometric data to other firms that hosted the information in their data centers . . . is a textbook violation of §15(d)." 454 F. Supp. 3d at 785; *see also Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604, 618 (N.D. Ill. 2020) ("The known involvement of a specific third party in the fingerprint-based system provides a basis to suspect that [defendant] disseminated the biometric data at issue.") (internal formatting omitted). Samsara's sole authority, *Jacobs v. Hanwha Techwin Am. Inc.*, 2021 WL 3172967, at *4 (N.D. Ill. July 27,

2021), is inapposite because it considered allegations made solely on "information and belief." *Id.* Many of Plaintiff's allegations are premised on admissions from Samsara's website.

### 5. Plaintiff plausibly alleged Samsara's intentional or reckless BIPA violation.

Plaintiff sufficiently alleged that Samsara intentionally or recklessly violated BIPA. Plaintiff cites to Samsara's own website where it acknowledges its collection of biometric information and its ability to "automatically recognize[e] and assign[] their names with their faces with high accuracy." Compl. ¶¶ 1, 24. Samsara asserts that Plaintiff has not alleged that Samsara "made no effort to comply with BIPA." Mot. at 18. This is false. Plaintiff asserts the myriad violations from Samsara despite BIPA being enacted over a decade ago. This supports a finding of an intentional and/or reckless BIPA violation. *See, e.g.*, *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020) ("[B]y alleging that Bimbo has made no effort to comply with BIPA, Peatry has pleaded facts to suggest Bimbo acted with negligence, recklessness, or intent."); *Neals*, 419 F. Supp. 3d at 1092 ("[T]he BIPA took effect more than ten years ago, and if the allegations of the complaint are true—as the Court must assume at this stage—defendant has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible.") (quoting *Rogers*, 2019 WL 5635180, at *5).

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully asks this Court to deny Defendant's motion in full.

Dated:  April 4, 2022

Respectfully submitted,

By: */s/ Jason L. Lichtman*　　　　　

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP

Jason L. Lichtman (IL Bar # 6290052)
Sean A. Petterson (admitted to the N.D. Ill.
general bar)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  212-355-9500
Email: jlichtman@lchb.com
spetterson@lchb.com

MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC

Gary M. Klinger (IL Bar # 6303726)
227 W. Monroe St., Ste. 2100
Chicago, IL 60606
Telephone: 866.252.0878
Email: gklinger@milberg.com

*Attorneys for Plaintiff and the Proposed Class*

2388548.7

## **CERTIFICATE OF SERVICE**

I, Jason L. Lichtman, certify that on April 4, 2022, I caused a copy of the foregoing

document was filed in the United States District Court for the Northern District of Illinois via the

Court's electronic filing system and that this document has been sent to all counsel of record via

the Court's electronic filing system.

*/s/ Jason L. Lichtman*
Jason L. Lichtman

2388548.7