# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID KARLING, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 1:22-cv-00295 |
| ) | |
| v. ) | Hon. Sara L. Ellis |
| ) | |
| SAMSARA INC., a Delaware Corporation, ) ) ) | |
| Defendant. ) | |

### DEFENDANT SAMSARA INC.'S REPLY IN SUPPORT OF
### ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I.   PLAINTIFF'S CLAIMS AGAINST SAMSARA ARE PREEMPTED BY FEDERAL LAW. ..........................................................................................................2

    A.   Applying BIPA Here Would Disrupt The Uniform Federal Regulatory Scheme. ..........................................................................................................2

    B.   Applying BIPA Here Would Hinder Congress's Goal Of Encouraging The Use Of Biometric Technology To Ensure Interstate Trucking Safety. ...........................................................................................................5

    C.   Plaintiff's Cases Are Inapposite .....................................................................7

    D.   Preemption Can And Should Be Resolved At This Stage. ............................8

II.  PLAINTIFF'S CLAIMS VIOLATE THE DORMANT COMMERCE CLAUSE. ...................................................................................................................9

III. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A BIPA CLAIM AGAINST SAMSARA. ...............................................................................................................10

    A.   Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(a) Of BIPA. ............................................................................................................10

    B.   Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(b) Of BIPA. ............................................................................................................11

    C.   Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(c) Of BIPA. ............................................................................................................13

    D.   Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(d) Of BIPA. ............................................................................................................14

    E.   Plaintiff Fails To Plausibly Allege That Samsara Intentionally Or Recklessly Violated BIPA. ...........................................................................15

CONCLUSION .......................................................................................................................15

# **TABLE OF AUTHORITIES**

**CASES**

*Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028 (7th Cir. 2008) ............................... 2-3, 4, 5

*Bernal v. ADP, LLC*, No. 2017-CH-12364, 2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) ......................................................................................................................12, 13

*Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520 (1959) ...............................................................9

*Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604 (N.D. Ill. 2020) ................................14

*Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) ................................................2

*Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006 (N.D. Ill. 2021) ............................7

*Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772 (N.D. Ill. 2020)..............................................12, 14

*Fleury v. Union Pacific Railroad Co.*, 528 F. Supp. 3d 885 (N.D. Ill. 2021) ................................7

*Flores v. Motorola Solutions, Inc.*, No. 20-CV-01128, 2021 WL 232627 (N.D. Ill. Jan. 8, 2021)....................................................................................................................13

*Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000)................................................5, 6, 7, 8

*Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831 (N.D. Ill. 2021) ...................................12

*Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir. 1987), *superseded by statute as stated in Nipponkoa Insurance Co., Ltd. v. Atlas Van Lines, Inc.*, 687 F.3d 780 (7th Cir. 2012) ........................................................................................................4

*Jacobs v. Hanwha Techwin America, Inc.*, No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ................................................................................................................14

*Kassel v. Consolidated Freightways Corp. of Delaware*, 450 U.S. 662 (1981) .............................9

*Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026 (N.D. Ill. 2016) ......................................8

*Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ..............................................................................................................................9, 10

*Morgan v. Virginia*, 328 U.S. 373 (1946)...............................................................................2, 4

*Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279 (N.D. Ill. 2019) .............................................15

*Neals v. Par Technology Corp.*, 419 F. Supp. 3d 1088 (N.D. Ill. 2019) ......................................12

*Owner-Operator Independent Drivers Ass'n v. United States Department of Transportation*, 840 F.3d 879 (7th Cir. 2016) ..................................................................6

*Podgorski v. Liberty Mutual Group Inc.*, No. 16 C 5549, 2016 WL 7187265 (N.D. Ill. Dec. 12, 2016) ..........................................................................................................8

*Rogers v. BNSF Railway Co.*, No. 19 C 3083, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019) ...............................................................................................................................7

*Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612 (N.D. Ill. 2019) ........................15

*Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301 (W.D. Wash. 2021) .....................................13, 14

**STATUTES**

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ...............................................1

740 ILCS 14/5....................................................................................................................................13

740 ILCS 14/10..................................................................................................................................12

740 ILCS 14/15(a) .............................................................................................................................10

740 ILCS 14/15(b) .............................................................................................................................11

740 ILCS 14/15(c) .............................................................................................................................13

740 ILCS 14/15(d)(1) ........................................................................................................................14

Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021)....................3, 6

**OTHER AUTHORITIES**

49 C.F.R. § 395.16(j) (2011)...............................................................................................................4

49 C.F.R. § 395.22(e)..........................................................................................................................3

*Privacy Impact Assessment, Federal Motor Carrier Safety Administration (FMCSA) Electronic Logging Devices Final Rule*, United States Department of Transportation (2015), https://www.transportation.gov/sites/dot.gov/files/docs/Privacy%20-%20FMCSA%20-%20ELD%20-%20PIA%20-%20Approved%20-%20121615.pdf ........................................................................................... 3-4, 6

*National Roadway Safety Strategy*, United States Department of Transportation (Jan. 2022), https://www.transportation.gov/sites/dot.gov/files/2022-02/USDOT-National-Roadway-Safety-Strategy.pdf ...............................................................4, 6, 9

Full of deflections and mischaracterizations, Plaintiff David Karling's opposition fails to demonstrate why Plaintiff's claims should not be summarily dismissed. As Defendant Samsara Inc. ("Samsara") showed in its opening memorandum, Plaintiff's proposed application of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), is squarely preempted by federal law because it would disrupt a uniform federal regulatory scheme and frustrate federal efforts to encourage the use of approved biometric technology to ensure interstate trucking safety. Moreover, Plaintiff's proposed application of BIPA violates the Dormant Commerce Clause because it substantially interferes with interstate commerce. And finally, Plaintiff fails to plead facts that plausibly allege BIPA violations.

Plaintiff's opposition does little to respond to these arguments. With respect to preemption, Plaintiff flatly denies the existence of the federal scheme to regulate interstate trucking safety, ignoring the federal government's longstanding effort to remedy the nation's persistent roadway safety problem by encouraging the use and adoption of biometric technology by the commercial trucking industry, which Samsara describes in detail in its opening memorandum. Moreover, Plaintiff argues that BIPA cannot be preempted because, in Plaintiff's view, it merely regulates how biometric data can be collected. But that *supports* preemption: by imposing Illinois-specific requirements, BIPA destroys federal uniformity and creates obstacles to the collection of biometric data that fly in the face of the federal government's active encouragement of the use of such technology. Indeed, in an admission of BIPA's discouraging effect, Plaintiff suggests that Samsara could "simply turn off Dash Cams when drivers enter Illinois." (Dkt. 21 ("Op.") at 12 n.8.)

Alternatively, Plaintiff says preemption is for summary judgment. But Plaintiff identifies no missing facts needed to resolve this issue, and there are none. The same goes for the Dormant Commerce Clause issue: Plaintiff asks this Court to wait, but never explains what will be offered

1

later. As for Plaintiff's failure to plausibly allege BIPA claims, Plaintiff responds by mischaracterizing the law and doubling down on conclusory allegations; neither effort succeeds. For these reasons and those set forth below, Samsara's motion to dismiss should be granted.

I. **PLAINTIFF'S CLAIMS AGAINST SAMSARA ARE PREEMPTED BY FEDERAL LAW.**

Federal law preempts state law when that state law poses an obstacle to the accomplishment of federal goals or frustrates the purpose of federal laws and regulations. *See, e.g., Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372–73 (2000). Here, Plaintiff's claims against Samsara are preempted twice over, as Plaintiff's proposed application of BIPA would (1) stand as an obstacle to the continued promulgation and enforcement of uniform federal regulation of interstate trucking safety and (2) frustrate Congress's efforts to encourage the use of biometric technology to advance interstate trucking safety. None of Plaintiff's cases refute these arguments. Indeed, Plaintiff largely avoids addressing the preemption claims at issue—Plaintiff frequently discusses *express* preemption when Samsara has asserted *obstacle* preemption. Nor has Plaintiff provided any reason to delay decision on this issue until summary judgment. Plaintiff's BIPA claims should be dismissed.

A. **Applying BIPA Here Would Disrupt The Uniform Federal Regulatory Scheme.**

Plaintiff's proposed application of BIPA is preempted because it would replace a uniform scheme of federal regulation of truck safety technologies with a patchwork of differing state rules. "Where uniformity is essential for the functioning of commerce, a state may not interpose its local regulation." *Morgan v. Virginia*, 328 U.S. 373, 377 (1946). Yet that is precisely what BIPA would do in this context: it would frustrate Congress's goal of achieving uniform commercial motor vehicle highway standards by imposing Illinois-specific requirements. Indeed, in *Aux Sable Liquid*

*Products v. Murphy*, 526 F.3d 1028 (7th Cir. 2008), the Seventh Circuit held that a weight restriction on a local road was preempted because it "frustrated" Congress's goal of "creat[ing] uniform standards for commercial motor vehicles utilizing the Interstate and other federal highways." *Id.* at 1036. This case is the same, as applying BIPA would require Samsara to provide its interstate customers, many of which are not even based in Illinois, with truck-safety technology tailored to comply solely with Illinois state law rather than with overarching federal transportation safety laws. Plaintiff's claims are thus preempted by the uniform federal scheme to continue to promulgate and enforce a comprehensive system of interstate trucking safety regulations.

Plaintiff claims that there is *not* any uniform federal scheme to regulate truck safety. (Op. at 5.) But over the last 85 years, Congress has passed no fewer than eleven statutes addressing truck safety. (*See* Dkt. 17-1 ("Mem.") at 3 n.6.) Indeed, just last year, Congress mandated the implementation of standards—including privacy and data security standards—relating to vehicle technology like Samsara's that prevents impaired driving and minimizes driver distraction. Infrastructure Investment and Jobs Act ("IIJA"), Pub. L. No. 117-58, §§ 24209, 24220, 135 Stat. 429 (2021).[1] Congress also has tasked at least four federal agencies with promulgating and administering a uniform system of interstate trucking safety regulations. (*See* Mem. at 2-3.) Among those regulations is a congressionally mandated Department of Transportation ("DOT") rule requiring truck drivers to "log into the [electronic logging device ('ELD')] system using their proper identification data," 49 C.F.R. § 395.22(e), such as via "*a biometric reader[] that uniquely identifies the driver to the ELD.*"[2] Plaintiff's contention that no uniform federal scheme exists,

---

[1] Plaintiff characterizes the IIJA as merely calling for "research" on this subject and says the IIJA thus does not "evidence a uniform scheme." (Op. at 6.) In fact, the IIJA requires the promulgation of *rules* after (and based on) the research. Pub. L. No. 117-58, §§ 24209(c), 24220(c).

[2] U.S. Dep't of Transp., Privacy Impact Assessment, Federal Motor Carrier Safety Administration (FMCSA) Electronic Logging Devices Final Rule, at 19 (2015),

3

therefore, is clearly untenable. *See, e.g.*, *National Roadway Safety Strategy*, U.S. Dep't of Transp. 15-16, 6 (Jan. 2022), https://www.transportation.gov/sites/dot.gov/files/2022-02/USDOT-National-Roadway-Safety-Strategy.pdf (explaining that the federal government "is responsible for overseeing the safe operation of commercial trucks") [hereinafter Safety Strategy].[3]

Plaintiff also insists that Samsara's preemption argument fails because, according to Plaintiff, BIPA "merely regulates how biometrics can be co[ll]ected" (Op. at 1), and therefore "does not conflict" with existing federal statutes and regulations. (*See id.* at 5-6.) Thus, in Plaintiff's view, BIPA would be preempted only if it *forbade* the collection of biometric information. (*See id.*) A uniform scheme of federal regulation, however, preempts not just those state laws that directly contradict federal law, but also those that destroy or degrade the uniformity of a regulatory scheme by *adding* requirements beyond those the federal government has prescribed. *E.g.*, *Aux Sable*, 526 F.3d at 1036 (weight restriction on local road preempted by uniform federal scheme); *Morgan*, 328 U.S. at 377 (explaining that a state "may not interpose its local regulation" when Congress has chosen uniformity); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987) (state common-law suit preempted because it "injected[ed] uncertainty back into [an] area of transportation" Congress had made uniform) (superseded by statute on other grounds).

BIPA does just that: it adds requirements that disrupt the uniform federal scheme. BIPA's "regulat[ion of] how biometrics can be co[ll]ected" (Op. at 1) is an imposition of a patchwork of

---

https://www.transportation.gov/sites/dot.gov/files/docs/Privacy%20-%20FMCSA%20-%20ELD%20-%20PIA%20-%20Approved%20-%20121615.pdf (emphasis added) [hereinafter Privacy Impact Assessment]; *see also* 49 C.F.R. § 395.16(j) (2011) (FMCSA rule authorizing the use of biometric technology to identify drivers).

[3] Plaintiff asserts the Safety Strategy is not entitled to *Chevron* deference (Op. at 5), but that is not the issue. The issue is whether the federal government has created a uniform statutory and regulatory scheme encouraging the use of biometric technology to achieve trucking safety that BIPA frustrates. Such a scheme exists, and the Safety Strategy acknowledges it.

4

state law requirements on Samsara and its interstate trucking customers. Indeed, to see this, one need only take Plaintiff's own suggestion that Samsara could turn off Dash Cams when drivers enter Illinois. (Op. at 12 n.8.) Depriving customers of the benefit of that safety technology only in Illinois because of BIPA is the *epitome* of non-uniformity.

Plaintiff's attempt to distinguish *Aux Sable* also falls short. Plaintiff does not profit from observing that *Aux Sable* was a Surface Transportation Assistance Act ("STAA") case. The STAA is merely *one* of the statutes with which Congress created uniform standards for interstate commercial motor vehicles. That the STAA addresses "the size, weight, and arrangements of trucks used in interstate commerce," rather than biometric technology, does not impact the principle *Aux Sable* recognizes and applies: that when a state law disrupts a uniform federal scheme by interposing a new, state-specific requirement, it is preempted. That lesson applies here.

Nor does Plaintiff succeed in characterizing *Aux Sable* as an express preemption case. (Op at 6.) While the STAA has an express preemption provision, *Aux Sable* "focus[ed] [its] attention on [the] third form of preemption": whether "local law *st[ood] as an obstacle* to the accomplishment and execution of the full purposes and objectives of Congress." 526 F.3d at 1033-34 (emphasis added) (quotation marks omitted). *Aux Sable* answered yes, because "Congress's *primary objective* in passing the STAA was to create uniform standards for commercial motor vehicles utilizing the Interstate and other federal highways." *Id.* at 1036 (emphasis added). *Aux Sable* is thus squarely on point, and requires dismissal of Plaintiff's claims.

**B.     Applying BIPA Here Would Hinder Congress's Goal Of Encouraging The Use Of Biometric Technology To Ensure Interstate Trucking Safety.**

Plaintiff's proposed application of BIPA also is preempted because it would frustrate Congress's specific, expressed intent to encourage the use of biometric technology to authenticate truck drivers' identities in connection with ELD operation. This case is like *Geier v. American*

5

*Honda Motor Co.*, 529 U.S. 861 (2000), where the Supreme Court deemed that a state law airbag requirement that "would have presented an obstacle to the variety and mix of devices that the federal regulation sought" was preempted. *Id.* at 881. So too here: Congress and federal agencies have chosen to authorize and encourage development of multiple means of verifying drivers' identities in connection with truck-safety technology. *See, e.g.*, IIJA, Pub. L. No. 117-58, § 24209(c); *see also* Privacy Impact Assessment at 19; Safety Strategy at 3. Most notable of these federal efforts is the ELD Rule and its enabling legislation. As the Seventh Circuit observed, "Congress meant for [DOT] to balance competing goals"—driver privacy and transportation safety—in the ELD Rule, and "[t]he agency understood this and balanced the competing directives in a reasonable manner." *Owner-Operator Ind. Drivers Ass'n v. U.S. Dep't of Transp.*, 840 F.3d 879, 888 (7th Cir. 2016). Yet if BIPA applies here, claims like Plaintiff's will discourage Samsara and other technology providers from developing biometric-enabled ELDs and other biometric truck-safety technologies. Take, again, Plaintiff's suggestion that Samsara could "turn off" Dash Cams when drivers enter Illinois. (Op. at 12 n.8.) Given a choice of safety technologies to develop and deploy, companies will be discouraged from selecting biometrics if they are forced to also develop technology that automatically disables safety-related biometric features when they may be subject to state-specific regulation (and the threat of lawsuits). Plaintiff's claims are thus preempted.

Plaintiff's response is revealing. Plaintiff remarkably avoids even mentioning the ELD Rule in the "encouragement" section of Plaintiff's opposition. (Op. at 7-8.) Instead, Plaintiff only addresses the ELD Rule in passing in the next section of the opposition, where Plaintiff maintains the ELD Rule is not preemptive because it does not "stat[e] an intention to preempt or supplant state law." (*Id.* at 8.) This response, however, mischaracterizes Samsara's argument as sounding

6

in *express* preemption. Samsara asserts *obstacle* preemption, and therefore the pertinent question is whether applying BIPA would discourage the adoption of biometrics in truck safety devices, not whether the ELD Rule includes an express preemption provision.

For the same reason, Plaintiff fails to distinguish *Geier*. Plaintiff says that the statute at issue in *Geier* "contained clear pre-emption language." (Op. at 7.) But the *Geier* Court held that this language did *not* preempt the state law airbag requirement at issue. 529 U.S. at 867. Instead, the state law airbag requirement was preempted because it stood as an *obstacle* to the accomplishment and execution of important federal objectives, including "the variety and mix of devices that the federal regulation sought." *Id.* at 881. Application of BIPA here would similarly frustrate the federal effort to actively encourage the development of biometric truck-safety technology by creating hurdles to its adoption. For that reason, Plaintiff's claims are preempted.

### C. Plaintiff's Cases Are Inapposite.

The cases Plaintiff offers (*see* Op. at 8-11) have no bearing on this motion to dismiss. Once again Plaintiff puts forth *express* preemption arguments. *See Rogers v. BNSF Ry. Co.*, 2019 WL 5635180, at *2-4 (N.D. Ill. Oct. 31, 2019) (express preemption); *Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 890-95 (N.D. Ill. 2021) (same). Here, Samsara maintains that application of BIPA is an *obstacle* to the accomplishment of federal goals.

*Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006 (N.D. Ill. 2021), also is not on point. *Crumpton* concerned a markedly different context: identification of blood plasma donors. *Id.* at 1011. The only federal statute at issue was a 1976 amendment to the Food, Drug, and Cosmetics Act ("FDCA"), which merely required that donation centers develop donor-identification procedures and expressed no preference on the means of proof. *See id.* at 1013. Due to FDCA's limited scope, *Crumpton* found no conflict with BIPA. *See id.* at 1013-14.

7

This context is far different. Unlike the defendant in *Crumpton*, Samsara does not rely on a stand-alone, forty-five-year-old statute that has nothing to do with biometrics and privacy. Here, Congress has created (and federal agencies have filled in) a uniform federal scheme that encourages the development of biometric technologies and that accounts for privacy concerns. Congress and the relevant agencies continue to be active in this space, with additional legislation passed just last year and new regulations on the way. Plaintiff says that "BIPA addresses the security concern of how an individual's biometric information is collected and used, not why it is collected." (Op. at 9) (emphasis omitted). But even if that is a true statement of *BIPA*'s purpose, the *federal* purpose is what matters for preemption. Distinct from *Rogers*, *Fleury*, and *Crumpton* (where collection and use of biometric information was entirely tangential to federal objectives), here "how" BIPA regulates the collection of biometric technology (by imposing state-specific requirements regarding notice and consent, creating the threat of statutory damages, etc.) directly frustrates federal aims to create an interstate trucking safety regime that uses biometric technology.

**D.     Preemption Can And Should Be Resolved At This Stage.**

Unable to mount a compelling case, Plaintiff tries to kick the can down the road, arguing that "preemption should be adjudicated on a factual record." (Op. at 4.) But as Plaintiff's own case explains (*see id.*), the relevant standard is the same in the preemption context as in any other: "when all relevant facts are presented, the court may properly dismiss [the] case before discovery." *Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026, 1029 (N.D. Ill. 2016). Accordingly, preemption cases are routinely decided at this stage. *E.g.*, *Geier*, 529 U.S. at 865-66; *Podgorski v. Liberty Mut. Grp. Inc.*, 2016 WL 7187265, at *2 (N.D. Ill. Dec. 12, 2016) ("Whether a law is preempted is a question of law which a court may decide at the motion to dismiss stage.").

8

Plaintiff identifies no facts that must be determined before this Court can rule on preemption.[4] Rather, as the preceding discussion illustrates, preemption here turns on legal questions—such as whether there is a uniform federal scheme that encourages the use of biometric technology to ensure interstate trucking safety. The Court can and should decide preemption now.

## II. PLAINTIFF'S CLAIMS VIOLATE THE DORMANT COMMERCE CLAUSE.

Plaintiff's proposed application of BIPA also violates the Dormant Commerce Clause. The Dormant Commerce Clause forbids a state from substantially interfering with interstate commerce by burdening out-of-state companies. In *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520 (1959), for example, the Supreme Court struck down a requirement that trucks on Illinois highways use a particular type of mudguard. *Id.* at 529-30. And in *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662 (1981), the Court held that state-specific truck-length limitations unconstitutionally burdened interstate commerce. *Id.* at 671. The same is true here: BIPA places an immense burden on Samsara and its customers, substantially interferes with interstate commerce, and improperly projects Illinois law into other states by requiring that Samsara ensure compliance with BIPA everywhere or prohibit its customers from using Samsara technology in Illinois.[5]

In response, Plaintiff attempts a misguided analogy to *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), arguing that Dormant Commerce Clause arguments fail where a proposed class consists only of individuals harmed by actions within a single state. (Op. at 12.) In *Monroy*, however, the relevant activity was confined within state boundaries: the "biometric

---

[4] Plaintiff complains about a passing citation Samsara made to American Trucking Association statistics concerning the dangers of trucking safety. (*See* Op. at 3 n.2.) But that citation merely notes that truck driving is dangerous—a fact Plaintiff does not deny and that finds support in judicially noticeable sources. *E.g.*, Safety Strategy at 23 ("5,005 fatalities are estimated to have involved a large truck in 2019….").

[5] As noted above, Plaintiff suggests it is fine to make Samsara turn off Dash Cams when drivers enter Illinois. (Op. at 12 n.8.) But that is the same as the argument that failed in *Bibb* (*i.e.*, that trucks could simply change their mudguards when entering Illinois). 359 U.S. at 527. It is no answer here either. *See id.*

9

data was obtained from photographs uploaded to Shutterfly in Illinois." 2017 WL 4099846, at *7. Here, by contrast, the underlying activity is inherently transitory: alleged biometric data is obtained in Illinois *and* in other states when "Illinois" truck drivers like Plaintiff drive across state borders. Given the inherently transitory nature of commercial trucking, Plaintiff's proposed application of BIPA cannot be cabined to Illinois and thus runs afoul of the Dormant Commerce Clause.

Lacking a compelling merits argument, Plaintiff once again seeks to punt until summary judgment. (Op. at 11.) But the cases Plaintiff cites stand simply for the unremarkable proposition that dismissal is inappropriate when factual development is necessary to assess a claim. (*See id.*) Here, Plaintiff never explains what facts need to be developed—because there are none. Further, interference with interstate commerce is clear from the face of the complaint. Plaintiff's claims violate the Dormant Commerce Clause.

### III. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A BIPA CLAIM AGAINST SAMSARA.

Plaintiff's claims should be dismissed for yet another reason: Plaintiff fails to plausibly allege that Samsara violated BIPA.

#### A. Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(a) Of BIPA.

Plaintiff's complaint does not sufficiently plead a Section 15(a) violation. Section 15(a) requires a company possessing biometric data to develop a publicly available retention policy that provides for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a). As Plaintiff concedes, Samsara's policy—publicly available on Samsara's website—states that "Samsara keeps facial recognition information for a customer no longer than necessary to provide its Camera ID service to that customer. To delete facial recognition information stored by Samsara, contact customer support." (Dkt. 17-3.) Samsara thus (1) developed a policy (2) that provides for the permanent destruction of biometric data when the purpose of collecting that data

has been satisfied and (3) made that policy publicly available. Given these undisputed facts, Plaintiff has not and cannot plausibly allege that Samsara violated Section 15(a).

Plaintiff is wrong in maintaining that Section 15(a) demands more. (*See* Op. at 13.) Plaintiff misleadingly claims that Samsara's policy does not identify how long data will be retained because it says only that data will be retained "no longer than necessary." (*See id.*) In fact, Samsara's policy tracks the requirement of Sections 15(a): it provides that data will only be kept while Samsara is providing Camera ID to its customer, and no longer. (*See* Dkt. 17-3.)

Nor is Plaintiff right that Samsara's policy allows Samsara to do something less than "permanent destruction." (*See* Op. at 13.) Samsara's policy states that Samsara "keeps" facial recognition information only as long as necessary to provide Camera ID to a customer. (Dkt. 17-3.) That is the same as saying Samsara destroys facial recognition information when it is no longer needed—if it were not destroyed, Samsara would, by logical necessity, be "keeping" it.

This conclusion is not undermined by the policy's second sentence, which allows a customer to call support to delete information. *See id.* The clear meaning of that sentence, in context, is that information can be deleted earlier than scheduled upon request—not that Samsara keeps information indefinitely. Plaintiff thus fails to plausibly allege a Section 15(a) violation.[6]

### B. Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(b) Of BIPA.

Plaintiff's complaint also does not establish a violation of Section 15(b) of BIPA. Section 15(b) prohibits collecting biometric information without providing notice and obtaining a "written release." 740 ILCS 14/15(b). While Section 15(b)'s language appears initially broad, BIPA

---

[6] Plaintiff cannot escape dismissal by suggesting that Samsara's policy was not in effect before Plaintiff's biometric information was allegedly collected. (Op. at 14.) Even if that were true (it is not), Plaintiff's Section 15(a) claim turns on Samsara's *present* policy. *E.g.*, Compl. ¶ 60 (alleging that Samsara "*has* not and *will* not destroy … biometric data" in accordance with Section 15(a) of BIPA (emphases added)).

11

clarifies that a "written release" in the "*context of employment*" is "a release executed *by an employee as a condition of employment*." 740 ILCS 14/10 (emphases added).

Here, Samsara did all that Section 15(b) demands of a *non*-employer: it required Plaintiff's *employer* to provide notice and obtain consent. (Mem. at 6.) As the Circuit Court of Cook County explained, it would be "absurd" to read Section 15(b) to compel, in an employment context, a third-party provider of biometric technology that lacks any direct relationship with the employees to collect releases. *Bernal v. ADP, LLC*, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Aug. 23, 2019). Plaintiff does not plead facts alleging that Samsara had a direct relationship with Plaintiff. Plaintiff does not even plead facts plausibly alleging that Samsara—as opposed to Plaintiff's employer, *using* the Samsara Dash Cam—collected Plaintiff's biometric data. Thus, what Samsara did— require that Plaintiff's employer notify and obtain a release from Plaintiff—was sufficient.

Plaintiff urges this Court not to follow *Bernal*. (Op. at 14-15.) But Plaintiff's own cases reinforce that Samsara did all that was necessary to satisfy Section 15(b). Plaintiff's lead case— *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772 (N.D. Ill. 2020)—explained that in the employment context a company like Samsara can "compl[y] [with Section 15(b)] by … requiring [p]laintiffs' employers, as a contractual precondition of using a … biometric … device, to agree to obtain their employees' written consent." *Id.* at 783. The second decision Plaintiff cites is in accord. *See Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 843 (N.D. Ill. 2021) ("agree[ing] with the *Figueroa* court's interpretation of the statute"). And the third simply did not address this fact pattern. *See Neals v. Par Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019).

Plaintiff also maintains that the complaint plausibly shows Samsara *did* directly collect Plaintiff's biometric information. Just like in *Bernal*, however, "[m]ost of Plaintiff's claims … are aimed at what the technology [Samsara] provides … allegedly does," rather than "what

12

[Samsara's] role relative to Plaintiff's biometric information is." 2019 WL 5028609, at *2; *see, e.g.*, (Op. at 15) (claiming "Samsara's *technology* 'will begin automatically recognizing and assigning their names with their faces with high accuracy' and *the AI Dash Cam* sends and stores the facial geometry data that it captures" (emphases added)). Plaintiff has not stated a claim.

### C. Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(c) Of BIPA.

Next, Plaintiff has not stated a claim for a Section 15(c) violation. Section 15(c) prohibits selling, leasing, trading, or otherwise profiting from "a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Plaintiff's complaint never alleges that Samsara sold or profited from Plaintiff's actual biometric data. Instead, Plaintiff asserts that Samsara "*receives* biometric information" and then "*provide[s] services* to Plaintiff's employer." Compl. ¶ 31 (emphases added). Under the plain statutory text, that is not a BIPA violation.[7]

Citing *Flores v. Motorola Solutions, Inc.*, 2021 WL 232627 (N.D. Ill. Jan. 8, 2021), and *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301 (W.D. Wash. 2021), Plaintiff insists that even if Samsara did not distribute biometric data, Section 15(c) is satisfied because Samsara *uses* biometric data to provide services. (Op. at 16-17.) Plaintiff's cases, however, support Samsara's plain reading of the text as rendering a defendant liable only when it sells or exchanges actual biometric identifiers or information. *See Flores*, 2021 WL 232627, at *3 (defendant sold access to a database containing biometric identifiers); *Vance*, 534 F. Supp. 3d at 1309 (no violation because biometric information was not disseminated). Indeed, given that BIPA's purpose is to protect underlying biometric data while encouraging the use of services that *rely* on it, *see* 740 ILCS 14/5,

---

[7] Plaintiff's opposition tries to overcome this problem by making new allegations not found in the Complaint. (*E.g.*, Op. at 16 (claiming "Samsara's AI Dash Cam is wholly reliant on its biometric information to identify who is driving and what behaviors they are engaging in")). But allegations outside the complaint cannot defeat a motion to dismiss, and in any event, the new allegations still fall short.

13

the Illinois General Assembly could not have intended for Section 15(c) to be applied beyond its text to encompass biometric-related services in which no actual biometric data is disseminated. *See Vance*, 534 F. Supp. 3d at 1308. Plaintiff's allegations do not show a Section 15(c) violation.

### D. Plaintiff Fails To Plausibly Allege Samsara Violated Section 15(d) Of BIPA.

Plaintiff has failed to state a claim for a Section 15(d) violation. Section 15(d) prohibits disclosure of a person's biometric data without first obtaining consent. *See* 740 ILCS 14/15(d)(1). Here, the complaint is devoid of plausible, fact-based allegations that Samsara, in providing services such as driver assignments and alerts to customers, discloses any underlying biometric identifier or biometric information to customers. Plaintiff's conclusory dissemination claims lack the specificity necessary to survive dismissal. *See Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *4 (N.D. Ill. July 27, 2021).[8]

Plaintiff maintains that bare allegations of dissemination are sufficient when a biometric-service relationship exists between a defendant and another entity. (*See* Op. at 17-18.) Plaintiff's authorities, however, concerned circumstances that supported an inference of dissemination by the defendant. In *Figueroa*, it was plausible the third parties could not have hosted the biometric information unless the defendant first gave it to them. 454 F. Supp. 3d at 785. Similarly, in *Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604 (N.D. Ill. 2020), the defendant (an employer) had to share employee fingerprints with the third-party vendors for the vendors to use them as an access mechanism. *See id.* at 610, 618. The facts alleged here demonstrate no similar necessity of disclosure by Samsara. They at most allow the inference that Samsara *received* biometric information. *See* Compl. ¶¶ 21-25. That is not enough: Section 15(d) applies to *disclosure*.

---

[8] Plaintiff would distinguish *Jacobs* as about "information and belief" pleading. (Op. at 17-18.) The relevant portions of the complaint here, however, *are* pleaded on information and belief. Compl. ¶¶ 22-25, 32.

14

### E. Plaintiff Fails To Plausibly Allege That Samsara Intentionally Or Recklessly Violated BIPA.

Finally, Plaintiff's complaint contains no factual claims supporting an inference that any purported BIPA violations were intentional or reckless. Plaintiff does not dispute the paucity of the complaint. Rather, Plaintiff maintains that intentionality and recklessness can be inferred because BIPA is not new. (*See* Op. at 18 (emphasizing that "BIPA [was] enacted over a decade ago").) That logic is unsound, as recognized by *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019), and *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019). Indeed, by Plaintiff's reasoning, *every* violation of *any* statute is intentional or reckless when the statute at issue is at least ten years old. *See Rogers*, 409 F. Supp. 3d at 619. Such a reading is absurd, because it would collapse the statutory distinction between a negligent and intentional/reckless violation. This Court should reject that sweeping theory of liability and dismiss Plaintiff's claim.

### CONCLUSION

WHEREFORE, for all the reasons set forth above and in its opening Memorandum, Defendant Samsara Inc. respectfully requests that the Court grant the motion to dismiss.

Dated: April 18, 2022                                             Respectfully submitted,

                                                                  SAMSARA INC.

                                                                  By: */s/ David C. Layden*
                                                                          One of its attorneys

David C. Layden
Elena M. Olivieri
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

15

## **CERTIFICATE OF SERVICE**

I certify that on April 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

*/s/ David C. Layden*