DAVID KARLING and JAMES BURGIN,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

        vs.

SAMSARA INC., a Delaware corporation

        Defendant.

Case No. 1:22-CV-00295

Hon. Sara L. Ellis

## DEFENDANT SAMSARA INC.'S ANSWER AND DEFENSES

Defendant Samsara Inc. files this answer and defenses to Plaintiffs' First Amended Class Action Complaint. To the extent any allegation in the complaint is not specifically or expressly admitted, the allegation is denied. Samsara denies all allegations contained in headings and unnumbered paragraphs. Samsara answers the corresponding numbered paragraphs of the complaint as follows:

## NATURE OF THE ACTION

1.     Samsara is a technology company that licenses facial recognition software to commercial fleets and industrial operations to monitor and identify their drivers. Samsara operates that technology through an inward-facing dashboard camera, and Plaintiffs allege that two central features of this camera violate BIPA. These features are called Camera ID and Distracted Driving Detection.

**ANSWER:**   Samsara admits that it is a technology company and that its customers include businesses in the transportation, wholesale and retail trade, construction, field services, logistics, utilities and energy, healthcare and education, manufacturing, and food and beverage industries, as well as state and local governments, and that those customers have extensive fleets of vehicles, equipment, and other assets. Samsara further admits that it licenses software to customers that purchase Samsara inward-facing dashboard cameras ("Dash Cams"), and that the

software includes an opt-in feature known as "Camera ID," which uses facial information to assign drivers to trips. Samsara further admits that Plaintiffs are alleging that the Camera ID feature and another opt-in feature of Samsara Dash Cams, the Distracted Driving feature, "violate BIPA." Samsara denies that it violated BIPA or engaged in any other wrongful conduct, denies that this case may properly be certified as a class action, and denies that Plaintiffs or the putative class members are entitled to recover damages or any other relief from Samsara in this action. Samsara denies the remaining allegations of Paragraph 1.

2.      Camera ID uses the inward-facing camera to identify who is driving a vehicle. To do so, according to Samsara's website, it "rel[ies] on facial recognition information derived from images of drivers."[1]

**ANSWER**:      Samsara admits that in Paragraph 2 Plaintiffs quote and characterize language on the Samsara website but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 2.

3.      After obtaining images of a driver's face through its Camera ID feature, Samsara sends an image of the driver's face to its agent, Amazon Web Services ("AWS"), to scan the driver's face against a database of faces belonging to that driver and their colleagues to determine who is driving.

**ANSWER:**      Samsara denies the allegations of Paragraph 3.

4.      To perform this facial recognition process, ███████████████████████

**ANSWER:**      ███████████████████████

---

[1] Special Feature, https://www.samsara.com/support/privacy/special-features (last visited October 12, 2023).

████████████. Samsara denies the remaining allegations of Paragraph 4.

5. ████████████████████████████

**ANSWER:** ████████████████████

████████████████████

████████████████

6. Plaintiffs and similarly situated Class Members did not consent to this collection of their biometric information[2] and biometric identifiers[3] (collectively, "biometrics") in violation of BIPA.

**ANSWER:** Samsara denies the allegations of Paragraph 6.

7. Samsara's Distracted Driving Detection feature similarly violates BIPA. This feature, ████████████████████████████

**ANSWER:** Samsara denies the allegations of Paragraph 7.

8. To do so, ████████████████████████

**ANSWER:** Samsara denies the allegations of Paragraph 8.

9. ████████████████████████████ In so doing,

---

[2] "Biometric information" is "any information regardless of how it is captured, converted, stored or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

[3] "Biometric identifier" means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

Samsara collects a driver's biometric information.

**ANSWER:** Samsara denies the allegations of Paragraph 9.

10. Samsara's actions violate four separate provisions of BIPA:

a. Samsara's written policy on retention schedules and guidelines for permanently destroying the biometrics it collects violates BIPA because it fails to inform the public about its actual retention schedule and guidelines for permanently destroying biometric information. *See* 740 ILCS 14/15(a).[4] Further, ███████████████████████████ ███████████████████████. *Id.*

b. Samsara, on its own and with its agent, AWS, collects drivers' biometric information in violation of 740 ILCS 14/15(b). Further, Samsara has not obtained written consent from a single driver, including Plaintiffs. Samsara's position that its customers can obtain blanket consent for themselves and Samsara fails both legally and factually. Legally, BIPA requires Samsara itself to obtain its own consent. Factually, discovery to date reveals that ███████████████████████████████████████.[5]

c. Samsara, on its own and through agent AWS, violates 740 ILCS 14/15(c) because when it licenses the use of its inward-facing cameras to its customers—for example, transportation companies like Plaintiffs' employer—it profits from being able to track Plaintiffs' and similarly situated individuals' biometrics. Biometrics are a necessary element of Samsara's business model, and by marketing its cameras and services, Samsara is commercially disseminating the biometrics. *See* 740 ILCS 14/15(c).

d. Finally, Samsara, on its own and through AWS, violates Plaintiffs' and other similarly situated individuals' rights when it discloses, rediscloses, or otherwise disseminates drivers' biometric identifiers or biometric information to drivers' employers without drivers' informed consent. *See* 740 ILCS 14/15(d).

**ANSWER:** Samsara denies the allegations of Paragraph 10.

**<u>PARTIES</u>**

11. Plaintiff David Karling is, and has been at all relevant times, a resident and citizen

---

[4] ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Samsara_00020. The Court previously considered this policy in its July 2022 motion to dismiss order and held that "the website says nothing about destruction guidelines." Dkt. 25, at 10-11.

[5] Samsara_001186.

of Illinois.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11, and therefore denies the allegations.

12. Plaintiff James Burgin is, and has been at all relevant times, a resident and citizen of Indiana.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12, and therefore denies the allegations.

13. Defendant Samsara Inc. is a corporation organized and existing under the laws of the State of Delaware and is headquartered in the State of California.

**ANSWER**: Samsara admits the allegations of Paragraph 13.

### JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act because the amount in controversy exceeds $5,000,000, and Samsara is a citizen of California and is therefore diverse from at least one Plaintiff.

**ANSWER**: Samsara admits the allegations of Paragraph 14.

15. This Court has personal jurisdiction over Samsara because Samsara is authorized to do business in this District, conducts substantial business in this District, and the actions giving rise to the complaint took place in this District. For instance, Samsara knowingly distributed its cameras to businesses operating in Illinois and its cameras inform Samsara of where drivers are located when the camera is capturing their information, including when drivers are located in Illinois.[6] Samsara also profits from biometrics collected from individuals physically present in Illinois.

**ANSWER**: Samsara admits that this Court has personal jurisdiction over Samsara. Samsara denies the remaining allegations of Paragraph 15.

16. Each of these facts independently is, and all of these facts together are, sufficient to render the exercise of jurisdiction by this Court over Samsara permissible under traditional notions of fair play and substantial justice.

**ANSWER**: Samsara admits that this Court has personal jurisdiction over Samsara.

---

[6] Samsara_0004. Samsara previously did not contest personal jurisdiction in moving to dismiss Plaintiff Karling's lawsuit in 2022. Dkt. 15.

Samsara denies the remaining allegations of Paragraph 16.

## FACTUAL BACKGROUND

**I.      THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT.**

17.      In 2008, Illinois enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276.

**ANSWER**:      The allegations in Paragraph 17 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits the transcript cited in Paragraph 17 contains the language quoted in Paragraph 17 but denies that Plaintiffs have accurately and completely described the reasons for the enactment of BIPA. Samsara denies the remaining allegations of Paragraph 17.

18.      The Illinois Legislature codified within BIPA that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

**ANSWER**:      The allegations in Paragraph 18 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 18 Plaintiffs purport to summarize certain provisions of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 18.

19.      To protect the public from these risks and serve the "public welfare, security, and safety," 740 ILCS 14/5(g), the Illinois Legislature enacted BIPA.

**ANSWER**:      The allegations in Paragraph 19 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 19 Plaintiffs purport to summarize certain provisions of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining

allegations of Paragraph 19.

20.     BIPA protects biometric identifiers, which include retina and iris scans, voiceprints, fingerprints, scans of hand geometry, and—most importantly here—scans of face geometry (also called "face vectors"). *See* 740 ILCS 14/10. It also protects biometric information, which is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

**ANSWER**:     The allegations in Paragraph 20 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 20 Plaintiffs purport to summarize certain provisions of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 20.

21.     BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and/or biometric information, unless it first:

> (1)     informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2)     informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3)     receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

**ANSWER**:     The allegations in Paragraph 21 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 21 Plaintiffs purport to summarize certain provisions of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 21.

22.     Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a). It also requires that "a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." *Id.*

**ANSWER***:* The allegations in Paragraph 22 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 22 Plaintiffs purport to summarize certain provisions of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 22.

23.     Section 15(c) of BIPA prohibits a private entity from "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

**ANSWER**:     The allegations in Paragraph 23 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 23 Plaintiffs purport to summarize certain provisions of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 23.

24.     Further, to disclose, redisclose, or otherwise disseminate biometric identifiers or biometric information, the entity must obtain the subject of the biometric identifier or biometric information's consent. *See* 740 ILCS 14/15(d)(1).

**ANSWER**:     The allegations in Paragraph 24 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 24 Plaintiffs purport to summarize certain provisions

of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 24.

25. Altogether, BIPA protects individuals' biometric identifiers and biometric information by requiring private entities to follow certain prerequisites before they collect, send, transmit, or disclose the information.

**ANSWER**: The allegations in Paragraph 25 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 25 Plaintiffs purport to summarize the requirements of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 25.

## II.  SAMSARA'S INWARD-FACING CAMERAS.

26. Samsara is a publicly owned technology company founded in 2015.[7]

**ANSWER**:  Samsara admits the allegations of Paragraph 26.

27. In late 2021, Samsara was listed on the New York Stock Exchange, where its stock currently trades, as of this filing, it has a market capitalization of roughly $13 billion.[8]

**ANSWER**:  Samsara admits the allegations of Paragraph 27.

28. Samsara claims that it works with 20,000 different businesses, its cameras have processed 38 billion minutes of video footage, and it collects 2 trillion data points yearly.[9] In Illinois, Samsara represented that "approximately 49,000 drivers employed by Samsara's customers…currently have Camera ID enabled and began a trip in the state of Illinois."[10]

**ANSWER**:  Samsara admits that in the first sentence of Paragraph 28 Plaintiffs characterize a document on Samsara's website but denies that Plaintiffs do so completely and

---

[7] https://www.samsara.com/company/about (last visited Oct. 12, 2023).

[8] https://finance.yahoo.com/quote/IOT/ (last visited Oct. 12, 2023).

[9] https://www.samsara.com/blog/samsara-engineering-culture (last visited Oct. 14, 2023); https://www.samsara.com/pages/thesamsaraadvantage/ (last visited Oct. 14, 2023).

[10] Samsara's Amended Responses to Plaintiff's Amended First Set of Interrogatories, Apr. 7, 2023, ROG 14.

accurately. Samsara further admits that in the second sentence of Paragraph 28 Plaintiffs purport to quote from Samsara's answers to interrogatories but denies that Plaintiffs do so accurately because, among other things, Samsara's answers to interrogatories make clear that the 49,000 figure that Plaintiffs reference in Paragraph 28 is a "rough, overinclusive approximation because of several factors, such as uncertainties about which drivers employed by Samsara customers used Camera ID, which of those drivers received notices and provided the consents required by BIPA, and which drivers are Illinois residents who can assert claims under BIPA. These individualized issues prevent Samsara from providing an accurate number." Samsara denies the remaining allegations of Paragraph 28.

29.     Relevant here, Samsara licenses a "Dual-Facing AI Dash Cam" ("Dash Cam") to commercial freight companies. The Dash Cam combines footage of drivers' faces and "advanced machine learning" to identify drivers, monitor their faces for signs of drowsiness or distracted driving, and associate "safety events" with individual drivers.[11]

**ANSWER**:     Samsara admits that it sells Dash Cams to customers, and that those customers may opt to license safety feature software that includes the ability to use features such as Camera ID and Distracted Driving Detection. Samsara denies the remaining allegations of Paragraph 29.

30.     Samsara's corporate representative and Vice President of Product Management - Safety estimated that ████████████████████████████████████████ ████████████████████████████████████████.[12]

**ANSWER**:     ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Samsara denies the remaining

---

[11] Samsara_00001, Automatic Driver Detection (Camera ID); Samsara_00023, AI Event Detection.

[12] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 105:3-10; 109:1-5.

allegations of Paragraph 30.

31. ███████████████████████████████████
███████████████[13]

**ANSWER**:    Samsara admits the allegations of Paragraph 31.

32.    Samsara's corporate representative estimated that █████████████
███████████████[14]

**ANSWER**:    ██████████████████████████████

██████████████████████████████████████

████████████████████████ Samsara denies the remaining allegations of Paragraph 32.

33. ████████████████████████████████████
████████████████████████████████████████
████████████████[15]

**ANSWER**:    ██████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████ Samsara denies the remaining allegations of Paragraph 33.

34.    As part of its package to trucking companies like Plaintiffs' employer, Samsara hosts, maintains, and provides access to its cloud-based software, the "Samsara Cloud

---

[13] *Id.* at 33:5-8.

[14] *Id.* at 109:1-11.

[15] Samsara's Supplemental Responses to Plaintiff's Third Set of Interrogatories, Sept. 28, 2023, ROG 1.

Dashboard"[16]

**ANSWER**: Samsara admits that customers may access the Samsara Dashboard, a cloud-based portal maintained by Samsara from which customers can manage their Samsara products and features. Samsara denies the remaining allegations of Paragraph 34.

35. Through the Dashboard, ██████████████████████████████████████████████████████████████████████████
██[17]

**ANSWER**: ██████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████ Samsara denies the remaining allegations of Paragraph 36.

36. Samsara's cloud storage is hosted through AWS as well, using its Amazon S3 product [18]. Upon information and belief, all driver biometric data collected by Samsara is stored via Amazon S3.

**ANSWER**: Samsara admits that it uses AWS cloud storage, including Amazon S3. Samsara denies the remaining allegations of Paragraph 36.

37. Samsara also uses AWS's CloudFront, "a content delivery network (CDN) service that securely delivers data, videos, applications, and APIs to customers globally."[19] Upon information and belief, Samsara uses CloudFront to deliver biometric data uploaded to the AWS cloud back to its customers upon request through the Samsara Cloud Dashboard.

**ANSWER**: Samsara admits that it uses AWS's CloudFront. Samsara denies the

---

[16] Access the Samsara Dashboard, https://kb.samsara.com/hc/en-us/articles/4410663027981-Access-the-Samsara-Dashboard (last visited Oct. 14, 2023).

[17] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 117:8-12; Samsara_007218.

[18] Samsara, Security, https://www.samsara.com/legal/security/ (last visited Oct. 16, 2023).

[19] AWS Whitepapers, Introduction, https://docs.aws.amazon.com/whitepapers/latest/secure- content-delivery-amazon-cloudfront/introduction.html (last visited Oct. 16, 2023).

remaining allegations of Paragraph 37.

38. Additionally, ███████████████████████████████████████ [20]
████████████████████████

**ANSWER:** ███████████████████████████████████

████████████████████████████████ Samsara denies the remaining

allegations of Paragraph 38.

39. Plaintiffs' and Class Members' biometrics are collected by Samsara and its agent AWS when trucking companies deploy the Camera ID and Distracted Driving Detection features.

**ANSWER:** Samsara denies the allegations of Paragraph 39.

## III.    SAMSARA'S CAMERA ID FEATURE COLLECTS BIOMETRICS.

A. ██████████████████████████████████████████

40. Samsara defines its Camera ID feature as ████████████████████
█████████████████ [21]

**ANSWER:** Samsara admits that the document cited in Footnote 21 contains the

language quoted in Paragraph 40 but denies that Plaintiffs accurately and completely describe that

document. Samsara denies the remaining allegations of Paragraph 40.

41.

**ANSWER:** Samsara admits that the document cited in Footnotes 22 and 23 contains the

language quoted in Paragraph 41 but denies that Plaintiffs accurately and completely describe that

---

[20] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 95:11-96:5.

[21] Samsara_015454.

[22] Samsara_015454.

[23] *Id.*

document. Samsara denies the remaining allegations of Paragraph 41.

**B.      How Camera ID Mechanically Works.**

42.      Mechanically [24]

**ANSWER:**      Samsara admits that the document cited in Footnote 24 contains the language quoted in the second sentence of Paragraph 42 but denies that Plaintiffs accurately and completely describe that document. Samsara denies the remaining allegations of Paragraph 42.



**ANSWER:** ███████████████████████████████████ ████████████████████████████ Samsara denies the remaining allegations of Paragraph 43.

44.      ██████████████████████████████████ [26]

**ANSWER:**      Samsara admits that the document cited in Footnote 26 contains the language quoted in Paragraph 44 but denies that Plaintiffs have accurately and completely

---

[24] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 115:2-116:5.

[25] In addition to capturing drivers' faces, internal documents produced by Samsara demonstrate that █████████████████████████████████████████████ █████████████████████████████████████████████ Samsara_017268.

[26] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 117:13-118:12.

described its contents. Samsara denies the remaining allegations of Paragraph 44.

45. [27]

**ANSWER:**

Samsara denies the remaining allegations of Paragraph 45.

46.

**ANSWER:**

Samsara denies the remaining allegations of Paragraph 46.

47.

"[A]fter identifying and assigning a driver 5-10 times to train the Camera ID, Samsara's Dash Cams will begin automatically recognizing and assigning their names with their faces with high accuracy."[29]

**ANSWER:** Samara admits the document cited in footnote 29 contains the language quoted in Paragraph 47 but denies that Plaintiffs accurately and completely describe that

---

[27] Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 2.

[28] *Id.*

[29] DOT Compliance: Overview and Tips for Fleet Managers, Apr. 20, 2020, https://www.samsara.com/guides/dot-compliance/ (last visited Oct. 14, 2023).

document. ██████████████████████████████████████████

██████████████████████████████████████████████████

Samsara denies the remaining allegations of Paragraph 47.

48. ███████████████████████████████████████████[30].

**ANSWER**: ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████ Samsara denies the remaining allegations of Paragraph 48.

49. The first step occurs ████████████████████████████[31]. At this point, ██████████████████████████████████████████████████████

**ANSWER**: ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[30] Samsara's Supplemental Response to Plaintiff's Amended First Set of Interrogatories, April 7, 2023, at ROG 3.

[31] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 125:23-126:16. ████████████
████████████████████████████████████████████████

[32] Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 2; Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 97:3-13.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ Samsara denies the remaining allegations of Paragraph 49.

50. Next, ████████████████████████████████████
████████████████████[33]

**ANSWER**: ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Samsara denies the remaining allegations of Paragraph 50.

51. ████████████████████████████████████
████████[34]

**ANSWER**: Samsara admits the allegations of Paragraph 51.

52. Specifically, ████████████████████████
████████████████████████████████████████████
████████████

---

[33] Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 2.
[34] *Id.*
[35] *Id.*

**ANSWER:** ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Samsara denies the remaining allegations of Paragraph 52.

53. ████████████████████████████████████████████████████████████████████████████████████████████████[36]

**ANSWER:** ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Samsara denies the remaining allegations of Paragraph 53.

54. ████████████████████████████████████████████████████[37]

**ANSWER:** ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ Samsara denies the remaining allegations of Paragraph 54.

55. ██████████████████████████████████[38]

**ANSWER:** ██████████████████████████

---

[36] *Id.*

[37] *Id.*

[38] *Id.*



Samsara denies the remaining allegations of Paragraph 55.

**C.**     **The Technical Means by which Camera ID collects biometrics.**

56.     Camera ID collects biometrics as follows: ███████████[39]

**ANSWER:**     Samsara denies the allegations of Paragraph 56.

57. ████████████████████

**ANSWER:** ████████████████████

████████████████████

Samsara denies the remaining allegations of Paragraph 57.

58. ████████████████████[40]

**ANSWER:**     Samsara admits that in Paragraph 58 Plaintiffs purport to describe AWS documentation regarding Rekognition but denies that Plaintiffs do so completely and accurately. Samsara denies the remaining allegations of Paragraph 58.

59.     AWS's Rekognition program relies on having a large database of driver biometric data to function accurately. AWS acknowledges that "hundreds of images may sometimes be required to train a custom model with high accuracy."[41] These driver images are provided by Samsara through driver data collected from its customers. The specific Rekognition services used by Samsara do not and cannot function without this input and direction from Samsara.

---

[39] *Id.*

[40] AWS, *Overview of face detection and face comparison,* https://docs.aws.amazon.com/rekognition/latest/dg/face-feature-differences.html (last visited Oct. 16, 2023).

[41] Amazon Rekognition, FAQS, https://aws.amazon.com/rekognition/faqs/#:~:text=Although%20hundreds%20of%20images%20 may,train%20again%20to%20iteratively%20improve (last visited Oct. 14, 2023).

**ANSWER**: Samsara admits that in the first two sentences of Paragraph 59 Plaintiffs purport to describe AWS documentation regarding Rekognition but denies that Plaintiffs do so completely and accurately. ███████████████████████ ████████████████████████████████████ Samsara denies the remaining allegations of Paragraph 59.

60. Rekognition's comparison is done by extracting "face vectors" of individuals, which are mathematical representations of an individual's face, including precise coordinates and measurements of facial features. These "face vectors," called "face prints," are biometrics unique to each individual driver.[42]

**ANSWER**: Samsara admits that in Paragraph 60 Plaintiffs purport to describe AWS documentation regarding its Rekognition feature but denies that Plaintiffs do so completely and accurately. Samsara denies the remaining allegations of Paragraph 60.

61. Thus, ████████████████████████████████████ ██████████████████████████████████

**ANSWER**: ████████████████████████████████ ███████████████████████████████ Samsara further admits that in Paragraph 61 Plaintiffs purport to describe the functionality of Rekognition but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 61.

62. In a recent lawsuit in the Western District of Washington against Amazon for violating BIPA through its Rekognition technology, an Amazon corporate representative testified, in his personal capacity in his Product Management role, that Rekognition works as follows: "And so how it works is, you can create a collection, you can call APIs to store face vectors, and the API you call to store a face vector is Index Faces. And then if you want to search against the faces, face

---

[42] *Id.*; Build Your Own Face Recognition Service Using Amazon Rekognition, Aug. 14, 2017 https://aws.amazon.com/blogs/machine-learning/build-your-own-face-recognition-service-using-amazon- rekognition/ (last visited Oct. 14, 2023).

[43] AWS, *IndexFaces*, https://docs.aws.amazon.com/rekognition/latest/APIReference/API_IndexFaces.html (last visited Oct. 16, 2023).

vectors that have been stored, you can do a Search Faces API call or you can do a Search Users API call. And that will send back a similarity score between the face vectors in the image that you searched with, compared to face vectors that are stored in the collection."[44]

**ANSWER**: The allegations of Paragraph 62 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that, in Paragraph 60, Plaintiffs purport to describe and quote from filings in a separate action against Amazon. Samsara denies the remaining allegations of Paragraph 62.

63. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[45]

**ANSWER**: Samsara denies the allegations of Paragraph 63.

64. While Samsara has attempted to disclaim responsibility for scanning biometrics, ████████████████[46] discovery in this case and publicly available documents evidence that Samsara █████████████████████████████████████████████████████████████████████

**ANSWER**: Samsara denies the allegations of Paragraph 64.

65. Specifically, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[44] *See Dorian v. Amazon Web Services, Inc.*, 2:22-cv-00269-JHC (W.D. Wash.), Dkt. 110-1, July 18, 2023 Deposition of Sean Simmons – 30(b)(6), 40:5-21.

[45] Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 2.

[46] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 124:14-21.

[47] ████████████████████████████████████████████

[REDACTED]<sup>48</sup>

**ANSWER**: Samsara admits that the document cited in Footnote 48 contains the language quoted in Paragraph 65 but denies that Plaintiff has accurately and completely described the contents of that document. Samsara denies the remaining allegations of Paragraph 65.

66. Further, Samsara's corporate representative testified that [REDACTED]

**ANSWER**: Samsara admits that in Paragraph 66 Plaintiffs quote text from the deposition of Samsara's Fed. R. Civ. P. 30(b)(6) corporate representative but denies that they do so accurately and completely. Samsara denies the remaining allegations of Paragraph 66.

67. Additionally, Samsara's internal documents show that [REDACTED]<sup>51</sup> [REDACTED] Put differently, [REDACTED]<sup>53</sup>

**ANSWER**: [REDACTED]

---

[48] Samsara_018330, at -331.

[49] [REDACTED]

[51] Samsara_15454.

[52] *Id.*

[53] As Samsara's corporate representative explained: "[REDACTED] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 170:11-23.

████████████████████████████████████████ To the extent the allegations in Paragraph 67 relate to Rekognition's processing of the image, Samsara lacks knowledge or information sufficient to form a belief about the truth of those allegations, and therefore denies those allegations. Samsara denies the remaining allegations of Paragraph 67.

68. Put simply, landmark data is biometric facial data unique to individuals and this evidences that ████████████████████████████.

**ANSWER**: Samsara denies the allegations of Paragraph 68.

**D.** **Samsara's Control and Storage of the Biometrics.**

69. While AWS provides the facial recognition platform, Samsara, through its in- house engineering department, controls the nuances of collecting, processing, and storing drivers' biometric information.

**ANSWER**: Samsara denies the allegations of Paragraph 69.

70. Samsara exclusively controls and directs whether a driver's photograph is scanned for biometrics, when and how those biometrics are used, and whether those biometrics are stored or deleted.

**ANSWER**: Samsara denies the allegations of Paragraph 70.

71. ████████████████████████████████████████[54]

For instance, ███████████[55].

**ANSWER**: ████████████████████████

████████████████████████████

████████████████████ Samsara denies the remaining

---

[54] Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 2.

[55] Samsara ████████████████████████████████████████

allegations of Paragraph 71.

72. [56]

**ANSWER**:

Samsara denies the remaining allegations of Paragraph 72.

73. [57]

[58]

**ANSWER**:

Samsara denies the remaining allegations of Paragraph 73.

74.

[59]

**ANSWER**: Samsara denies that the testimony cited in footnote 59 relates to Plaintiffs' factual allegations in Paragraph 74. Samsara denies the remaining allegations of Paragraph 74.

75. . The data for Camera ID is "securely stored and protected in line with all of our other Samsara cloud data."[60] [61]

---

[56] Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 2.

[57] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 96:6-97:6.

[58] Samsara_007218.

[59] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 137:21-138:7.

[60] Samsara_00001, Automatic Driver Detection (Camera ID).

[61] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 97:18-98:4

**ANSWER:** ██████████████████████████ Samsara

denies the remaining allegations of Paragraph 75.

## IV. SAMSARA'S DISTRACTED DRIVING DETECTION FEATURE COLLECTS BIOMETRICS.

76. Samsara's Distracted Driving Detection feature also collects biometrics. As Samsara puts it, the feature "[d]etects distractions indicated by a dip in head pose such as using a phone, eating, drinking, talking to passengers, or fiddling with the stereo while operating the vehicle."[62]

**ANSWER:** Samsara admits that the document cited in footnote 62 contains the language quoted in Paragraph 76. Samsara also admits that the Distracted Driving Detection feature detects a driver's head pose and determines whether that pose is consistent with a distracted behavior (i.e., if the head is pointed to the left, right, down, or otherwise away from the road) using pitch, yaw, and roll datapoints to determine the direction the driver is facing. Samsara denies that Distracted Driving Detection collects biometrics. Samsara denies the remaining allegations of Paragraph 76.

77. Distracted Driving Detection functions by scanning and storing information about an individual to "analyze the head position of a driver in real time."[63] Specifically, Samsara states that "accurate detection" of distracted driving relies on "best practices" such as "avoid[ing] covering the driver's head by removing glasses, hats, masks, and objects hanging in the view of the camera," "ensur[ing] adequate lighting in the driver cab[,]" and "keep[ing] hands away from the driver's face. Any obstruction of the face can confuse the detector."[64]

**ANSWER:** Samsara admits that the Distracted Driving Detection feature detects a driver's head pose and determines whether that pose is consistent with a distracted behavior (i.e., if the head is pointed to the left, right, down, or otherwise away from the road) using pitch, yaw, and roll datapoints to determine the direction the driver is facing. Samsara also admits that it advises customers to avoid obstruction of the Dash Cam and reduce other factors that may reduce the Distracted Driving

---

[62] Samsara_00023, AI Event Detection.

[63] Samsara_00046, Distracted Driving Detection.

[64] *Id.*

Detection's ability to determine the pitch, yaw, and roll of the driver's head. Samsara denies the remaining allegations of Paragraph 77.

78. The Distracted Driving Detection feature scans drivers' heads continuously to determine whether they are engaging in any behaviors that Samsara identifies as those of a distracted driver.

**ANSWER:** Samsara admits that when a vehicle is driving above a threshold speed determined by the customer and the feature is enabled, Distracted Driving Detection detects the pitch, yaw, and roll of the driver's head in real time to determine if the driver's head pose is consistent with a distracted behavior (i.e., if the head is pointed to the left, right, down, or otherwise away from the road). Samsara denies the remaining allegations of Paragraph 78.

79. Specifically, the Distracted Driving Detection functions by



**ANSWER:** Samsara admits that the documents cited in Footnotes 65 and 66 contain the language quoted in Paragraph 79 but denies that Plaintiffs have accurately and completely described the functionality of the Distracted Driving Detection feature. Samsara denies the remaining allegations of Paragraph 79.

80.



**ANSWER:** Samsara denies the allegations of Paragraph 80.

81.
, and, as Samsara's corporate representative explained, "

---

[65] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 73:23-74:15; Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 3.
[66] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 209:11-12.
[67] *Id.* at 213:12-21.

,68

**ANSWER**: Samsara admits that in Paragraph 81 Plaintiffs quote text from the deposition of Samsara's Fed. R. Civ. P. 30(b)(6) corporate representative but denies that they do so accurately and completely. Samsara denies the remaining allegations of Paragraph 81.

82. ███████████████████████████████████
███████████████████████████[69]

**ANSWER**: ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████ Samsara denies the remaining allegations of Paragraph 82.

83. ███████████████████████████████████
███████████████████████████[70]

**ANSWER**: ████████████████████████████████
████████████████████████████████████████████

---

[68] *Id.* at 73:23-74:15.

[69] *Id.* at 214:1-13.

[70] Samsara_007218; Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 96:17-98:3; Samsara_015725.

████████████████████████████████████████ Samsara denies the remaining allegations of Paragraph 83.

84. ████████████████████████████████████████[71]

ANSWER: ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████ Samsara denies the remaining allegations of Paragraph 84.

85. ████████████████████████████████████████[72]

ANSWER ████████████████████████████████████

████████████████████████████████████

████████████████ Samsara denies the remaining allegations of Paragraph 85.

## V. SAMSARA VIOLATES FOUR PRONGS OF THE ILLINOIS' BIOMETRIC INFORMATION PRIVACY ACT.

### A. Samsara failed to establish and adhere to BIPA's written destruction policy requirement.

86. BIPA requires Samsara to: "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers

---

[71] Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 225:4-226:3.

[72] *Id.* at 97:23-98:3.

and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." 740 ILCS 14/15(a).

**ANSWER**: Samsara admits that in Paragraph 86 Plaintiffs purport to characterize Section 15(a) of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 86.

87. Put differently, Section 15(a) imposes two requirements on Samsara—to develop a written, publicly available public with a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information and to comply with its policy. Samsara fails on both accounts.

**ANSWER**: Samsara admits that in Paragraph 87 Plaintiffs purport to characterize Section 15(a) of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 87.

88. Samsara's website, in a portion titled "Special Features: About Camera ID Technology," states that it "keeps facial recognition information for a customer no longer than necessary to provide its Camera ID service to that customer. To delete facial recognition information stored by Samsara, contact customer support."[73]

**ANSWER**: Samsara admits that in Paragraph 88 Plaintiffs quote and characterize Samsara's Special Features page but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 88.

89. This policy fails to adhere to BIPA's requirements in three ways. First, it does not establish a retention schedule. It merely states that it "keeps facial recognition information for a customer no longer than necessary."[74] What "necessary" means in this circumstance is unknowable to the public or to individuals who have had their information collected by Samsara.

**ANSWER**: Samsara denies the allegations of Paragraph 89.

90. Second, it fails to contain "guidelines for permanent destruction" because "no

---

[73] Special Features, https://www.samsara.com/support/privacy/special-features (last visited Oct. 16, 2023).
[74] *Id.*

longer than necessary" is again an unknowable standard that could differ between unstated customer needs.[75] There is no way for Plaintiffs and Class Members to know whether the guidelines for permanent destruction have been met.

**ANSWER**: Samsara denies the allegations of Paragraph 90.

91. Third, it fails to "permanently destroy" the biometric identifiers based on the stated language. The first sentence: "Samsara keeps facial recognition information for a customer no longer than necessary to provide its Camera ID service to that customer" is inconsistent with the second sentence, "to delete facial recognition information stored by Samsara, contact customer support."[76] Plaintiffs and Class Members cannot know whether Samsara deletes information when it is "no longer necessary" or if they must "contact customer support" to have their information deleted.[77] And neither sentence demonstrates that the destruction is *permanent*.

**ANSWER**: Samsara denies the allegations of Paragraph 91.

92. The Court previously analyzed Samsara's policy in its motion to dismiss order and held that "the website says nothing about destruction guidelines." Dkt. 25 at 11.

**ANSWER**: Samsara admits that in Paragraph 92 Plaintiffs quote from and characterize language from the Court's Order on Samsara's motion to dismiss but denies that Plaintiffs describe the opinion accurately and completely. Samsara denies the remaining allegations of Paragraph 92.

93. Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Samsara subsequently ▮▮▮▮▮▮▮▮▮▮▮▮[79]



**ANSWER**: Samsara denies the allegations of Paragraph 93.

94. In addition to failing to meet BIPA's requirements for the terms of its destruction policy, Samsara did not adhere to BIPA's requirement that it "comply with its established retention schedule and destruction guidelines." 740 ILCS 14/15(a).

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] Samsara_000838.

[79] Samsara_019476 (emphasis added).

**ANSWER**: Samsara denies the allegations of Paragraph 94.

95. Specifically, ████████████████████████████████████████
████████████████████████████████████████████████████████

**ANSWER**: Samsara denies the allegations of Paragraph 95.

96. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████[80] Put differently,
████████████████████████████████████████[81]

**ANSWER**: ████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[80] Samsara_000671.

[81] *Id.*

[BLACK REDACTION BARS]

Samsara denies the remaining allegations of Paragraph 96.

97. [REDACTED]

**ANSWER**: [REDACTED]

[REDACTED] Samsara denies the remaining allegations of Paragraph 97.

98. Samsara failed to comply with its own policy, which stated that contacting Samsara customer support would result in the deletion of a driver's data.

**ANSWER**: Samsara denies the allegations of Paragraph 98.

99. [REDACTED][84]

**ANSWER**: Samsara denies the allegations of Paragraph 99.

100. AWS, Samsara's agent, likewise has no publicly available data retention policy covering the biometric data of Samsara's customers.

**ANSWER**: The allegations in Paragraph 100 regarding AWS' data retention policy do

---

[82] *Id.*

[83] *Id.*

[84] Samsara_018149.

not plead factual allegations about or specific to Samsara therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 100 Plaintiffs purport to characterize AWS's data retention policy but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 100.

**B.** **Samsara failed to obtain the requisite consent under BIPA to collect Plaintiffs and Class Members' biometric information.**

101.     BIPA requires Samsara, because it is an entity that collects and captures Plaintiffs' and Class Members' biometric identifiers and biometric information to first: "(1) inform[] the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) inform[] the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receive[] a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b).

**ANSWER**:     Samsara admits that in Paragraph 101 Plaintiffs purport to characterize Section 15(b) of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 101.

**1.** **Samsara failed to obtain consent from drivers who had their biometrics captured through Samsara's Camera ID feature.**

102.     Samsara never obtained consent from Plaintiffs to collect their biometric identifiers and biometric information. █████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ,"[85] Samsara nevertheless failed to obtain consent.

**ANSWER**:     Samsara denies the allegations of Paragraph 102.

103.     Instead, Samsara takes the position that it bears no responsibility for obtaining written consent for drivers whose employers have Camera ID enabled despite collecting Plaintiffs' and Class Members' biometric information and biometric identifiers.

**ANSWER**:     Samsara denies the allegations of Paragraph 103.

104.     ████████████████████████████████████████████████████████████████████

---

[85] Samsara_000117

[86]

**ANSWER:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Samsara denies the remaining allegations of Paragraph 104.

105.   Samsara does not require its customers to provide any proof of legally sufficient consent and, indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**ANSWER:**   Samsara denies the allegations of Paragraph 105.

106.   Samsara's attempt to get written consent through its customers fails legally and factually.

**ANSWER:**   Samsara denies the allegations of Paragraph 106.

107.   First, the text of BIPA is clear that the entity collecting the biometric identifier and biometric information must be the one to obtain consent and it cannot do so derivatively. In contrast to obtaining consent from the "subject" of the biometric collection, where the statute makes it clear that the "subject or the subject's legally authorized representative" may provide consent, the statute does not permit Samsara to obtain consent derivatively through its customers. 740 ILCS 14/15(b).

**ANSWER:**   Samsara admits that in Paragraph 107 Plaintiffs purport to characterize

Section 15(b) of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies

the remaining allegations of Paragraph 107.

108.   The statutory text indicates that Samsara must be the entity to "inform" the subject of its collection of biometrics, "inform" the subject of its "specific purpose and length of term" for collecting, storing, and using biometrics, and Samsara must "receive" the written release executed by the subject. *Id.*

---

[86] Samsara_000917

**ANSWER:** Samsara admits that in Paragraph 108 Plaintiffs purport to characterize Section 15(b) of BIPA but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 108.

109. Samsara's policy of deferring completely to its customers is legally deficient.

**ANSWER:** Samsara denies the allegations of Paragraph 109.

110. Factually, discovery reveals that ████████████████████████████
████████████████████████

**ANSWER:** Samsara denies the allegations of Paragraph 110.

111. Specific to Plaintiffs, their employer, Lily Transportation, installed Samsara's Dash Cams around August 22, 2021 in the vehicles they operate.[87] Plaintiffs were not required to sign any form of consent until December 16, 2021.[88]

**ANSWER:** Samsara admits, on information and belief, that Lily Transportation installed Samsara Dash Cams in its fleet in or around August 2021. Samsara lacks knowledge and

████████████████████████████████████████████████

and therefore denies those allegations.

112. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████[89]

**ANSWER:** ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████ Samsara

denies the remaining allegations of Paragraph 112.

---

[87] Deposition of David Karling, Aug. 21, 2023, at 128:19-129:3.
[88] *Id.* at 184:13-16.
[89] Samsara_001186.

**ANSWER:** Samsara denies the allegations of Paragraph 113.

114. ██████████████████████████████████████[90]

**ANSWER:** ████████████████████████████████

██████████████████████████████████████

Samsara denies the remaining allegations of Paragraph 113.

115. ██████████████████████████████████████

██████████████[91]

**ANSWER:** ████████████████████████████

██████████████████████████████████████

Samsara denies the remaining allegations of Paragraph 115.

116. ██████████████████████████████████████

██████████████████████████████

**ANSWER:** Samsara denies the allegations of Paragraph 116.

117. Per Plaintiffs' experience with Samsara's Dash Cam in their vehicles, ████████ ████████████████████████████████, after Plaintiffs had taken numerous other trips, that Lily first asked them to sign consent forms.

**ANSWER:** Samsara lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 117 and therefore denies those allegations.

---

[90] Samsara_001174.

[91] Samsara_001186.

118. This example demonstrates precisely why Samsara cannot simply farm out its compliance with BIPA to its customers.

**ANSWER:** Samsara denies the allegations of Paragraph 118.

### 2. Samsara failed to obtain consent from drivers who had their biometrics captured through Samsara's Distracted Driving Detection Feature.

119. Upon information and belief, Samsara does not require consent in any form, including via pop-up box, for customers to use Distracted Driving Detection, despite the fact that it also collects biometric identifiers through this feature.

**ANSWER:** Samsara denies the allegations of Paragraph 119.

120. Upon information and belief, there is no pop up presented to customers who enable the Distracted Driving Detection feature.

**ANSWER:** Samsara denies the allegations of Paragraph 120.

121. Upon information and belief, Samsara also does not obtain any form of consent directly from drivers who have their biometrics collected through Samsara's Distracted Driving Detection feature.

**ANSWER:** Samsara denies the allegations of Paragraph 119.

### C. Samsara profits from Plaintiffs' and Class Members' biometric identifiers and biometric information.

122. BIPA prohibits a private entity, like Samsara, that possesses a biometric identifier or biometric information from "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

**ANSWER:** Samsara admits that in Paragraph 122 Plaintiffs purport to describe Section 15(c) of BIPA but denies that they do so accurately and completely. Samsara denies the remaining allegations of Paragraph 122.

123. Samsara profits from Plaintiffs' and Class Members' biometric identifiers and biometric information through the licensing fees charged to its customers. Specifically, ███████████████████████████████████████████████ [92].

---

[92] Samsara's Supplemental Responses to Plaintiff's Third Set of Interrogatories, Sept. 28, 2023, ROG 1.

**ANSWER**: ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████ Samsara denies the remaining allegations of Paragraph 123.

124. ██████████████████████████████████████████████████████
████████████████████████████████████████████████

**ANSWER**: ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████ Samsara denies the remaining allegations of Paragraph 124.

125. █████████████████████████████████████████████████████████
████████████████████████████[93]

**ANSWER**: ████████████████████████████████████████████
█████████████████████████████████████████████████████ Samsara denies the remaining allegations of Paragraph 125.

126. Biometric information is a necessary element of Samsara's Camera ID feature. The entire purpose of Camera ID is driver identification. ██████████████████████████
█████████████████████████████████████████████

---

[93] Samsara's corporate representative testified that ███████████████████████████
███████████████████ Rule 30(b)(6) Deposition of Ingo Wiegand, Sept. 29, 2023, at 109:1-11.

**ANSWER:** ███████████████████████████████████

███████████████████████████████████

████████████████████████████ Samsara denies the remaining allegations of Paragraph 126.

127. Scanning and comparing a face against a database of other faces is no different than social media companies maintaining and searching through a database of customer faces or a technology company selling law enforcement access to its database to find facial matches.

**ANSWER:** Samsara denies the allegations of Paragraph 127.

128. Likewise, ████████████████████████████████████████████████████████████████████████████████████████

**ANSWER:** Samsara denies the allegations of Paragraph 128.

129. Samsara markets the Camera ID and Distracted Driving Detection features of its Dash Cams to give it a competitive edge in the marketplace and enhance sales and profits. In so doing, Samsara profits from Plaintiffs' and Class Members' biometric information in violation of BIPA.

**ANSWER:** Samsara denies the allegations of Paragraph 129.

**D.      Samsara discloses Plaintiffs' and Class Members' biometric identifiers and biometric information without consent.**

130. BIPA requires that entities cannot "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure." 740 ILCS 14/15(d)(1).[94]

**ANSWER:** Samsara admits that in Paragraph 130 Plaintiffs purport to describe Section 15(d) of BIPA but denies that they do so accurately and completely. Samsara denies the remaining

---

[94] The other exceptions to disclosure enumerated in the statute (completing a financial transaction, being required to do so by law, or being required by warrant or subpoena) are not applicable here. *See* 740 ILCS 14/15(d)(2)-(4).

allegations of Paragraph 130.

131. As detailed above, Camera ID and Distracted Driving Detection capture Plaintiffs' and Class Members' biometric information. That information is disclosed by Samsara to AWS for processing by Rekognition and/or storage through S3.[95]

**ANSWER**: Samsara denies the allegations of Paragraph 131.

132. Samsara failed to obtain consent for: (1) its disclosure of biometric information to AWS and (2) its disclosure of biometric information to customers.

**ANSWER**: Samsara denies the allegations of Paragraph 132.

133. Specifically, Samsara never directly obtained consent from any truck driver to permit it to disclose their biometric information. Again, Samsara farmed out consent to its customers. This fails legally for the same reasons as it does under Section 15(b).

**ANSWER**: Samsara denies the allegations of Paragraph 133.

134. Moreover, the example Illinois Biometric Information Policy that Samsara makes available to its customers is silent about the customer and/or Samsara disclosing Samsara's information to AWS.[96]

**ANSWER**: Samsara denies allegations of Paragraph 134.

135. Thus, the consent forms that Lily belatedly made Plaintiffs sign said nothing about AWS or the fact that AWS would receive Plaintiffs' biometric information.[97]

**ANSWER**: Samsara denies the allegations of Paragraph 135.

136. Thus, Plaintiffs and Class Members did not consent to the disclosure of biometric information to AWS because they were never informed of the fact that their biometric information was sent to AWS.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 136 about what Plaintiffs were informed of and therefore denies those allegations. Samsara denies the remaining allegations of Paragraph 136.

137. Samsara also failed to obtain consent to disclose its biometric information to

---

[95] Samsara, Security, https://www.samsara.com/legal/security/ (last visited Oct. 16, 2023).

[96] Samsara_000004.

[97] Karling_000092.

customers by never obtaining consent directly from drivers.

**ANSWER**: Samsara denies the allegations of Paragraph 137.

138. Indeed, most drivers (and even their employers) would have little way of knowing that AWS collects, stores, and uses driver biometric data at all.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 138 about what drivers are aware or have knowledge of and therefore denies those allegations. Samsara denies the remaining allegations of Paragraph 138.

139. Few, if any, of Samsara's public-facing sources of information on its facial recognition technology mention that it uses AWS's Rekognition product or that it uploads, stores, and disseminates biometric data using AWS platforms,[98] nor does the sample consent form provided by Samsara to its customers.[99]

**ANSWER**: Samsara denies the allegations of Paragraph 139.

140. Through processing and storing driver images sent by Samsara, AWS collected and collects the unique, permanent biometric identifiers and exposed drivers like Plaintiffs to irreversible privacy risks. If AWS's database of digitized facial vectors were to fall into the wrong hands, by data breach or otherwise, the individuals to whom these sensitive and immutable biometric identifiers belong could have their identities stolen, among other serious issues.

**ANSWER**: Samsara denies the allegations of Paragraph 140.

141. Finally, AWS violates Section 15(d) of BIPA because it discloses, rediscloses, or otherwise disseminates the biometric information of drivers without their consent when it processes drivers' biometric information (through Rekognition or otherwise), stores it on Amazon S3, and then sends that information back to Samsara for use in its Camera ID and Distracting Driving Detection features.

**ANSWER**: Samsara denies the allegations of Paragraph 141.

E. **Samsara is vicariously liable for AWS's violations of BIPA.**

---

[98] Special Features, https://www.samsara.com/support/privacy/special-features/ (last visited Oct. 16, 2023); Samsara Terms of Service, https://www.samsara.com/legal/platform-terms-of-service (last visited Oct. 16, 2023); Automatic Driver Detection (Camera ID), https://kb.samsara.com/hc/en- us/articles/360042878172-Automatic-Driver-Detection-Camera-ID- (last visited Oct. 16, 2023).

[99] Camera ID Driver Consent, https://kb.samsara.com/hc/en-us/articles/360036848351-Camera-ID-Driver-Consent (last visited Oct. 16, 2023).

### 1. Samsara exercised actual control over AWS in relation to its use of Rekognition and S3.

142. Alternatively, Samsara violates BIPA through the actions of its agent, AWS.

**ANSWER:** Samsara denies the allegations of Paragraph 142.

143. Upon information and belief, AWS acted within the scope of its authority as Samsara's agent when it processed, collected, used, stored, and disseminated biometric information in the ways described above on Samsara's behalf. Upon information and belief, the relationship between Samsara and AWS is governed by a written contract outlining the scope of this authority in which AWS agrees to act as Samsara's agent and at Samsara's direction.[100]

**ANSWER:** Samsara denies the allegations of Paragraph 143.

144. Upon information and belief, Samsara had the right to control how AWS processed, collected, used, stored, and disseminated the data Samsara sent to AWS.

**ANSWER:** Samsara denies the allegations of Paragraph 144.

145. For example, ███████████████████████████████████████[101]

**ANSWER:** Samsara denies the allegations of Paragraph 145.

146. Additionally, Samsara controlled the storage by AWS of driver biometric information collected through Camera ID and Distracted Driving Detection. For instance, ███████████████[102]

**ANSWER:** Samsara denies the allegations of Paragraph 146.

147. The services that AWS performed on behalf of Samsara benefitted Samsara, in that they allowed Samsara to develop, market, and sell biometric facial recognition software to its customers.

**ANSWER:** Samsara denies the allegations of Paragraph 147.

148. Thus, in addition to being directly liable, Samsara is also vicariously liable for

---

[100] Samsara has not produced its contract with AWS. This is presently the subject of a pending discovery dispute before the Court. *See* Dkt. 74.

[101] Samsara's Supplemental Response to Plaintiff's Second Set of Interrogatories, Sept. 28, 2023, at ROG 2.

[102] *Id.*

BIPA violations caused by the use of Rekognition. Under principles of agency law, AWS through its Rekognition tool functioned as Samsara's agent because it is subject to the actual authority of Samsara. Additionally, the Rekognition tool functioned as Samsara's software agent under principles of agency law.

**ANSWER:** Samsara denies the allegations of Paragraph 148.

## 2. Samsara ratified actions taken by AWS vis-à-vis customer data.

149. Samsara knew that the processing, collection, use, storage, and dissemination of driver biometric data by AWS violated BIPA and allowed AWS to continue to perform these actions on its behalf.

**ANSWER:** Samsara denies the allegations of Paragraph 149.

150. In the alternative, Samsara was willfully ignorant of AWS's BIPA violations.

**ANSWER:** Samsara denies the allegations of Paragraph 150.

151. Samsara has timely manifested its assent to the actions taken by AWS vis-à-vis customer biometric data through its continuing use of Rekognition and S3 to process, collect, store, and disseminate driver's biometric information.

**ANSWER:** Samsara denies the allegations of Paragraph 151.

152. AWS has been sued numerous times for its Rekognition product allegedly violating BIPA. For example, in *Rivera v. Amazon Web Services, Inc.*, 2023 WL 4761481 (W.D. Wash. July 26, 2023), the Western District of Washington Court denied AWS's motion to dismiss BIPA claims alleging that the Rekognition product violates Sections 15(a) and (b) of BIPA. In that suit, Plaintiffs allege that Rekognition's product collects their biometrics, indexes them, and possesses their information in violation of BIPA and Rekognition fails to have a publicly available retention schedule. *Id.* Likewise, in *Hogan v. Amazon.com, Inc.*, 2022 WL 952763 (N.D. Ill. Mar. 30, 2022), Plaintiffs sued arguing that their Amazon Photos service used Rekognition to collect their biometrics without consent. There, Judge Leinenweber denied Amazon's motion to dismiss a claim under Section 15(b) and held that the statements in Amazon's Terms of Use did not satisfy BIPA's consent requirements.[103]

**ANSWER:** The allegations in Paragraph 152 do not plead factual allegations about or specific to Samsara in any way and therefore do not require a response. To the extent a response is required, Samsara admits that in Paragraph 152 Plaintiffs purport to describe court proceedings

---

[103] In the same order, the Court remanded Plaintiffs' BIPA Sections 15(a) and (c) claims to Illinois state court.

brought against AWS but denies that Plaintiffs describe those proceedings accurately and completely. Samsara denies the remaining allegations of Paragraph 152.

153. Samsara did not end its relationship with AWS despite these sustained allegations and thus ratified AWS's collection of biometrics using Rekognition.

**ANSWER**: Samsara denies the allegations of Paragraph 153.

154. Alternatively, ratification is easily presumed based on Samsara's continuing use of AWS products vis-à-vis driver biometric data.

**ANSWER**: Samsara denies the allegations of Paragraph 154.

155. Further indicating its assent, at no point did Samsara limit or stop AWS's processing or storage of driver biometric data. Rather, Samsara continues to use AWS for the storage, processing, and dissemination of driver biometric information to this day, including information collected in the State of Illinois in violation of BIPA.

**ANSWER**: Samsara denies the allegations of Paragraph 155.

## VI. NAMED PLAINTIFFS' ALLEGATIONS

### A. Plaintiff David Karling

156. During the relevant time, Plaintiff Karling worked as a driver in Illinois for a commercial customer of Samsara, Lily Transportation.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 156 and therefore denies those allegations.

157. On or around August 22, 2021, Plaintiff Karling's employer installed a Dash Cam, provided by Samsara, in the truck Mr. Karling operates.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 157 and therefore denies those allegations.

158. Plaintiff Karling did and does operate a truck equipped with a Samsara Dash Cam and has done since on or around August 22, 2021.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 158 and therefore denies those allegations.

159. Plaintiff Karling's employer requires him to use Samsara's Dash Cam.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 159 and therefore denies those allegations.

160. Samsara uses its Dash Cam to extract biometric identifiers from Plaintiff Karling's face while he drives and sends them to AWS to be stored through S3. The Dash Cam automatically performs facial recognition to identify him by sending his biometric identifiers to AWS to be processed and compared against his biometric identifiers, which Samsara previously extracted and sent to AWS.

**ANSWER**: Samsara denies the allegations of Paragraph 160.

161. Samsara also uses and used the Dash Cam to scan Plaintiff Karling's face vectors in order to identify distracted or drowsy driving behaviors using the Distracted Driving Detection feature. This information is captured through continuous video footage while the vehicle is being operated, is stored by AWS using S3, and is made available for customer review through the Samsara Cloud Dashboard.

**ANSWER**: Samsara denies the allegations of Paragraph 161.

162. Plaintiff Karling never consented, agreed or gave permission—written or otherwise—to Samsara for the collection or storage of his unique biometric identifiers or biometric information.

**ANSWER**: Samsara denies the allegations of Paragraph 162.

163. Further, Samsara did not provide Plaintiff Karling with, nor did he ever sign, a written release allowing Samsara to collect or store his unique biometric identifiers or biometric information.

**ANSWER**: Samsara denies the allegations of Paragraph 163.

164. The only consent form signed by Plaintiff Karling was offered by his employer, Lily Transportation, on December 16, 2021, almost four months after the Samsara cameras were installed in Plaintiff Karling's cab.

**ANSWER**: Samsara admits that Plaintiff Karling signed a consent form in connection with his use of Samsara brand Dash Cams installed by Lily Transportation in its fleet. Samsara lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 164 and therefore denies those allegations.

165. Likewise, Samsara did not provide Plaintiff Karling with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage, or use of his unique biometric identifiers or biometric information.

**ANSWER:** Samsara denies the allegations of Paragraph 165.

166. By collecting Plaintiff Karling's unique biometric identifiers or biometric information without his consent, written or otherwise, Samsara invaded Plaintiff Karling's statutorily protected right to privacy in his biometrics.

**ANSWER:** Samsara denies the allegations of Paragraph 166.

167. Finally, Samsara did not provide Plaintiff Karling with a retention schedule and/or guidelines for permanently destroying his biometric identifiers and biometric information.

**ANSWER:** Samsara denies the allegations of Paragraph 167.

**B. Plaintiff James Burgin**

168. During the relevant time, Plaintiff Burgin worked out of a distribution center in Illinois as a driver for a commercial customer of Samsara, Lily Transportation.

**ANSWER:** Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 168, and therefore denies those allegations.

169. On or around August 22, 2021, Plaintiff Burgin's employer installed a Dash Cam, provided by Samsara, inside the truck Mr. Burgin operates.

**ANSWER:** Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 169, and therefore denies those allegations.

170. Plaintiff Burgin did and does operate a truck equipped with a Samsara Dash Cam and has done so since on or around August 22, 2021.

**ANSWER:** Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 170, and therefore denies those allegations.

171. Plaintiff Burgin's employer requires him to use Samsara's Dash Cam.

**ANSWER:** Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 171, and therefore denies those allegations.

172. During his employment, Samsara, upon information and belief, used the Dash Cam to extract biometric identifiers from Plaintiff Burgin's face while he drove and sent them to AWS to be stored through S3. The Dash Cam automatically performs facial recognition to identify him by sending his biometric identifiers to AWS to be processed and compared against his biometric identifiers, which Samsara previously extracted and sent to AWS.

**ANSWER**: Samsara denies the allegations of Paragraph 172.

173. Samsara also uses and used the Dash Cam to scan Plaintiff Burgin's face vectors in order to identify distracted or drowsy driving behaviors using the Distracted Driving Detection feature. This information is captured through continuous video footage while the vehicle is being operated, is stored at Samsara's direction by AWS using S3, and is made available for customer review through the Samsara Cloud Dashboard.

**ANSWER**: Samsara denies the allegations of Paragraph 173.

174. Plaintiff Burgin never consented, agreed or gave permission—written or otherwise—to Samsara for the collection or storage of his unique biometric identifiers or biometric information.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 174 and therefore denies those allegations.

175. Further, Samsara did not provide Plaintiff Burgin with, nor did he ever sign, a written release allowing Samsara to collect or store his unique biometric identifiers or biometric information.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 175 and therefore denies those allegations.

176. The only consent form signed by Plaintiff Burgin was offered by his employer, Lily Transportation, on or around December 16, 2021, almost four months after the Samsara cameras were installed in Plaintiff Burgin's cab.

**ANSWER**: Samsara lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 176 and therefore denies those allegations.

177. Likewise, Samsara did not provide Plaintiff Burgin with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage, or use of his unique biometric identifiers or biometric information.

**ANSWER**: Samsara denies the allegations of Paragraph 177.

178. By collecting Plaintiff Burgin's unique biometric identifiers or biometric information without his consent, written or otherwise, Samsara invaded Plaintiff Burgin's statutorily protected right to privacy in his biometrics.

**ANSWER**: Samsara denies the allegations of Paragraph 178.

179. Finally, Samsara did not provide Plaintiff Burgin with a retention schedule and/or

guidelines for permanently destroying his biometric identifiers and biometric information.

**ANSWER:** Samsara denies the allegations of Paragraph 179.

## CLASS ALLEGATIONS

180. **Class Definition:** Plaintiffs bring this action on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who, while present in the State of Illinois, were subject to Samsara's Camera ID or Distracted Driving Detection features.

**ANSWER**: Samsara admits that in Paragraph 180 Plaintiffs purport to describe the alleged putative class that Plaintiffs seek to represent but denies that there is a basis to certify such alleged class or any other class in this action. Samsara denies the remaining allegations of Paragraph 180.

181. **Numerosity: Federal Rule of Civil Procedure 23(a)(1)**. The number of persons within the Class is substantial, "approximately 49,000 drivers employed by Samsara's customers…currently have Camera ID enabled and began a trip in the state of Illinois."[104] It is, therefore, impractical to join each Class Member, particularly given the relatively modest value of any individual claim. Indeed, Defendant does not contest numerosity. *See* Dkt. 61.

**ANSWER**: Samsara admits that Samsara had agreed not to oppose Plaintiffs' anticipated motion for class certification on the ground that the proposed class, under Fed. R. Civ. P. 23(a)(1), is not so numerous that joinder of all members is impracticable. Samsara further admits that in Paragraph 181 Plaintiffs purport to quote from Samsara's answers to interrogatories but denies that Plaintiffs do so accurately because, among other things, Samsara's answers to interrogatories make clear that the 49,000 figure that Plaintiffs reference in Paragraph 181 is a "rough, overinclusive approximation because of several factors, such as uncertainties about which drivers employed by Samsara customers used Camera ID, which of those drivers received notices and provided the consents required by BIPA, and which drivers are Illinois residents who can assert

---

[104] Samsara's Amended Responses to Plaintiff's Amended First Set of Interrogatories, Apr. 7, 2023, ROG 14.

claims under BIPA. These individualized issues prevent Samsara from providing an accurate number." Samsara denies the remaining allegations of Paragraph 181.

182. **Typicality: Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the claims of Class Members in that Plaintiffs, like all Class Members, had their biometric identifiers collected, captured, stored, processed, disseminated, disclosed, and redisclosed by Samsara without their consent and in violation of 740 ILCS 14/15(b) & (d). Plaintiffs are further typical of the Class in that they were impacted by the lack of publicly available retention schedules for their biometric information, which Samsara failed to make available in violation of 740 ILCS 14/15(a). Finally, Plaintiffs are typical of the Class in that Samsara profited of their biometric information in violation of 740 ILCS 14/15(c).

**ANSWER**: Samsara denies the allegations of Paragraph 182.

183. **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and (b)(3)**. There are well-defined common questions of fact and law that exist as to all Class Members, and that predominate over any questions affecting only individual Class Members. These common legal and factual questions do not vary across Class Members and may be determined without reference to the individual circumstances of any individual. They, include, but are not limited to:

(a) whether Defendant collected or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

(b) whether Defendant properly informed Plaintiffs and the Class that it collected, used, and stored Plaintiffs' and Class Members' biometric identifiers or biometric information;

(c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and Class Members' biometric identifiers or biometric information;

(d) whether Defendant developed written policies, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

(e) whether Defendant used Plaintiffs' and Class Members' biometric identifiers or biometric information to identify them;

(f) whether Defendant sold, leased, traded, or profited from Plaintiffs' and Class Members' biometric identifiers or biometric information; and

(g) whether Defendant's violations of BIPA were committed

intentionally, recklessly, or negligently.

**ANSWER**: Samsara denies the allegations of Paragraph 183.

184. **Adequacy: Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional class representatives to represent the Class, additional claims as may be appropriate, or to amend the class definition to address any steps that Samsara took.

**ANSWER**: Samsara denies the allegations of Paragraph 184.

185. **Superiority**: **Federal Rule of Civil Procedure 23(b)(3)**. A class action is the superior method for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class Member. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

**ANSWER**: Samsara denies the allegations of Paragraph 185.

**COUNT I**
**FOR DAMAGES AGAINST SAMSARA**

**VIOLATION OF 740 ILCS 14/15(A) – FAILURE TO INSTITUTE, MAINTAIN, AND ADHERE TO PUBLICLY AVAILABLE RETENTION SCHEDULE**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

186. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER**: Samsara incorporates its responses to Paragraphs 1 through 186 as though fully set forth herein.

187. BIPA mandates that companies in possession of biometric data establish and

maintain a satisfactory biometric data retention—and, importantly, deletion—policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

**ANSWER**: Samsara admits that, in Paragraph 187, Plaintiffs purport to describe the provisions of BIPA, but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 187.

188.     Samsara failed to comply with these BIPA mandates.

**ANSWER**: Samsara denies the allegations of Paragraph 188.

189.     Because Samsara is a corporation, it is a "private entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER**:     Samsara denies the allegations of Paragraph 189.

190.     Plaintiffs are individuals who had their "biometric identifiers" captured and/or collected by Samsara, as explained in detail in above. *See* 740 ILCS 14/10.

**ANSWER**:     Samsara denies the allegations of Paragraph 190.

191.     Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER**:     Samsara denies the allegations of Paragraph 191.

192.     Samsara failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

**ANSWER**:     Samsara denies the allegations of Paragraph 192.

193.     Samsara's purported retention schedule and policy was deficient for the reasons stated above and the Court previously held in its motion to dismiss order that it "says nothing about destruction guidelines." Dkt. 25 at 11.

**ANSWER**:     Samsara denies the allegations of Paragraph 193.

194.     █████████████████████████████████████████████████.

**ANSWER**:     Samsara denies the allegations of Paragraph 194.

195. Thus, Samsara lacked retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data and have not and will not destroy Plaintiffs' and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

**ANSWER:** Samsara denies the allegations of Paragraph 195.

196. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Samsara to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein pursuant to 740 ILCS 14/20(4); (3) liquidated damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:** Samsara admits that in Paragraph 196, Plaintiffs purport to describe the relief they seek in this action but denies that Plaintiffs are entitled to any relief. Samsara denies the remaining allegations of Paragraph 196.

**COUNT II**
**FOR DAMAGES AGAINST SAMSARA**

**VIOLATION OF 740 ILCS 14/15(B) – FAILURE TO OBTAIN INFORMED WRITTEN CONSENT AND RELEASE BEFORE OBTAINING BIOMETRIC IDENTIFIERS OR INFORMATION**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

197. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:** Samsara incorporates its responses to Paragraphs 1 through 196 as though fully set forth herein.

198. BIPA requires companies to obtain informed written consent from persons before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . " 740 ILCS 14/15(b) (emphasis added).

**ANSWER:** Samsara admits that in Paragraph 198 Plaintiffs purport to describe the

provisions of BIPA, but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 198.

199. Samsara failed to comply with these BIPA mandates.

**ANSWER:** Samsara denies the allegations of Paragraph 199.

200. Because Samsara is a corporation, it is a "private entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:** Samsara denies the allegations of Paragraph 200.

201. Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected and/or captured by Samsara, as explained in detail above. *See* 740 ILCS 14/10.

**ANSWER:** Samsara denies the allegations of Paragraph 201.

202. Plaintiffs' and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:** Samsara denies the allegations of Paragraph 202.

203. Samsara systematically and automatically collected, captured, used, and stored Plaintiffs' and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

**ANSWER:** Samsara denies the allegations of Paragraph 203.

204. Samsara never informed Plaintiffs, and never informed any Class Member, in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, and/or used, nor did Samsara inform Plaintiffs and the Class in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

**ANSWER:** Samsara denies the allegations of Paragraph 204.

205. By collecting, capturing, storing, and/or using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Samsara violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

**ANSWER:** Samsara denies the allegations of Paragraph 205.

206. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Samsara to comply with BIPA's requirements for the collection, capture, storage, use and dissemination of biometric identifiers and biometric information as described herein pursuant

to 740 ILCS 14/20(4); (3) liquidated damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER**: Samsara admits that, in Paragraph 206 Plaintiffs purport to describe the relief they seek in this action, but denies that Plaintiffs are entitled to any relief. Samsara denies the remaining allegations of Paragraph 206.

**COUNT III**
**FOR DAMAGES AGAINST SAMSARA**

**VIOLATION OF 740 ILCS 14/15(C) – BY PROFITING FROM PLAINTIFFS' AND CLASS MEMBERS' BIOMETRIC IDENTIFIERS OR INFORMATION (ON BEHALF OF PLAINTIFFS AND THE CLASS)**

207. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER**: Samsara incorporates its responses to Paragraphs 1 through 206 as though fully set forth herein.

208. BIPA prohibits a private entity from "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a person's or a customer's biometric identifier or biometric information." *See* 740 ILCS 14/15(c).

**ANSWER**: Samsara admits that in Paragraph 208 Plaintiffs purport to describe the provisions of BIPA, but denies that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 208.

209. Samsara fail to comply with this BIPA mandate.

**ANSWER**: Samsara denies the allegations of Paragraph 209.

210. Because Samsara is a corporation, it is a "private entity" under BIPA. *See* 740 ILCS § 14/10.

**ANSWER**: Samsara denies the allegations of Paragraph 210.

211. Plaintiffs are individuals who had their "biometric identifiers" captured and/or collected by Samsara, as explained in detail in above. *See* 740 ILCS 14/10.

**ANSWER**: Samsara denies the allegations of Paragraph 211.

212.    Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:**    Samsara denies the allegations of Paragraph 212.

213.    Samsara possesses Plaintiffs' and Class Members' biometric identifiers and/or biometric information.

**ANSWER:**    Samsara denies the allegations of Paragraph 213.

214.    Samsara profits from Plaintiffs' and Class Members' biometric identifiers and/or biometric information through the licensing fees it charges its customers for its cameras.

**ANSWER:**    Samsara denies the allegations of Paragraph 214.

215.    By profiting from Plaintiffs' and Class Members' biometric identifiers and/or biometric information, Samsara violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/10(c).

**ANSWER:**    Samsara denies the allegations of Paragraph 215.

216.    On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Samsara to comply with BIPA's requirements for the collection, captures, storage, use and dissemination of biometric identifiers and biometric information as described herein pursuant to 740 ILCS 14/20(4); (3) liquidated damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:**    Samsara admits that in Paragraph 216 Plaintiffs purport to describe the relief they seek in this action, but denies that Plaintiffs are entitled to any relief. Samsara denies the remaining allegations of Paragraph 216.

**COUNT IV**
**FOR DAMAGES AGAINST SAMSARA**

**VIOLATION OF 740 ILCS 14/15(D) – BY DISCLOSING AND REDISCLOSING PLAINTIFFS' AND CLASS MEMBERS' BIOMETRIC IDENTIFIERS OR INFORMATION**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

217.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**    Samsara incorporates its responses to Paragraphs 1 through 216 as though

fully set forth herein.

218. BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

**ANSWER**: Samsara admits that in Paragraph 218 Plaintiffs purport to describe the provisions of BIPA but deny that Plaintiffs do so accurately and completely. Samsara denies the remaining allegations of Paragraph 63.

219. Samsara fail to comply with this BIPA mandate.

**ANSWER**: Samsara denies the allegations of Paragraph 219.

220. Because Samsara is a corporation, it is a "private entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER**: Samsara denies the allegations of Paragraph 220.

221. Plaintiffs are individuals who had their "biometric identifiers" captured and/or collected by Samsara, as explained in detail in above. *See* 740 ILCS 14/10.

**ANSWER**: Samsara denies the allegations of Paragraph 221.

222. Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER**: Samsara denies the allegations of Paragraph 222.

223. Samsara systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

**ANSWER**: Samsara denies the allegations of Paragraph 223.

224. By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Samsara violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

**ANSWER**: Samsara denies the allegations of Paragraph 224.

225. On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Samsara to comply with BIPA's requirements for the collection, capture, storage, use

and dissemination of biometric identifiers and biometric information as described herein pursuant to 740 ILCS 14/20(4); (3) liquidated damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER**: Samsara admits that, in Paragraph 225, Plaintiffs purport to describe the relief they seek in this action, but denies that Plaintiffs are entitled to any relief. Samsara denies the remaining allegations of Paragraph 225.

## DEFENSES

Below are Samsara's defenses. By setting forth these defenses, Samsara does not assume any burden of proof as to any fact issue or other element of any cause of action or defense that properly belongs to Plaintiffs. Samsara reserves the right to amend or supplement its defenses. In asserting defenses as to putative class members' claims, Samsara in no way concedes any class may properly be certified and reserves its right to oppose certification of any class.

1. The claims of Plaintiffs and the putative class are preempted, in whole or in part, by federal law, because they would disrupt the federal regulatory scheme relating to interstate truck safety and discourage the use of federally approved biometric technology.

2. The claims of Plaintiffs and the putative class are barred, in whole or in part, because they purport to require this Court to apply the requirements of BIPA in violation of the dormant Commerce Clause of the United States Constitution.

3. The claims of Plaintiffs and the putative class are barred, in whole or in part, because they purport to require this Court to apply the requirements of BIPA to activity occurring outside Illinois, in violation of the Illinois prohibition on giving statutes extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute. *See, e.g., Avery v. State Farm Mut. Ins. Co.*, 216 Ill.2d 100, 184-85 (2005).

4. The claims of Plaintiff and the putative class are barred, in whole or in part,

because they purport to require this Court to abridge Samsara's freedom of speech, in violation of the First Amendment to the United States Constitution.

5. The claims of Plaintiffs and the putative class for statutory liquidated damages are barred, in whole or in part, because they violate the Due Process Clauses of the United States Constitution and the Illinois Constitution.

6. The claims of Plaintiffs and the putative class are barred, in whole or in part, because the recovery requested would not be a reasonable estimate of any actual damages, but instead would amount to a disparate penalty, akin to punitive damages for strict liability, given that Plaintiffs and the putative class members have not suffered any injury or incurred any harm to warrant such relief.

7. Any award of statutory or liquidated damages to Plaintiffs, who do not allege any actual damages, or any member of the putative class who likewise does not claim any actual damages, would constitute a grossly excessive penalty and would therefore violate Samsara's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and comparable provisions of the Illinois Constitution. BIPA's substantive requirements under 740 ILCS 14/15 and the statutory or liquidated damages provisions under 740 ILCS 14/20 are also unconstitutionally vague and therefore void under the Fourteenth Amendment and comparable provisions of the Illinois Constitution, including because they do not provide adequate notice of what the statute requires, the conduct the statue prohibits, or potential damages, and they also vest the reviewing court with undue discretion to arbitrarily assess liability and fashion damages awards.

8. BIPA is unconstitutionally vague, as it on the one hand imposes grossly excessive damages wholly unrelated to any actual harm, while at the same time making damages

discretionary without any basis for how courts and juries should weigh this discretion. This leads to an arbitrary assessment of damages as it lacks any standards or factors to which parties, judges, and juries can assess a damages award that comports with the due process and equal protection guarantees of the United States Constitution.

9. The claims of Plaintiffs and the putative class are barred, in whole or in part, because the requirements of BIPA constitute special legislation in violation of the Illinois Constitution.

10. The claims of Plaintiffs and the putative class are barred, in whole or in part, because BIPA, including but not limited to the statute's definitions of "biometric identifiers" and "biometric information," is vague in violation of the Illinois Constitution.

11. The claims of Plaintiffs and/or members of the putative class are barred in whole or in part because they purport to require this Court to apply the requirements of BIPA to a third-party technology provider without a direct relationship to its customers' employees and would result in an absurd application of BIPA.

12. The claims of Plaintiffs and/or members of the putative class are barred in whole or in part because Samsara complied with the requirements of BIPA when it required its customers to certify they obtained consent from their employees as a condition of utilizing Camera ID and/or Distracted Driving Detection.

13. The claims of Plaintiffs and the putative class are barred, in whole or in part, because they provided consent to Samsara's alleged collection of their alleged biometric data.

14. The claims of Plaintiff and the putative class are barred, in whole in in part, because Samsara substantially complied with BIPA through, among other things, its requirement that customers to certify they obtained consent from their employees as a condition of utilizing

Camera ID and/or Distracted Driving Detection.

15. The claims of Plaintiffs and/or members of the putative class are barred in whole or in part because Samsara has a publicly available data retention policy.

16. The claims of Plaintiff and the putative class are barred, in whole or in part, because any alleged violation of BIPA by Samsara was not negligent, intentional, or reckless.

17. The claims of Plaintiffs and/or members of the putative class are barred in whole or in part to the extent they are preempted by federal labor law.

18. The claims of Plaintiffs and/or members of the putative class are barred, in whole or in part, by the doctrine of implied consent, estoppel, waiver, ratification, and acquiescence. Upon information and belief, Plaintiffs and/or members of the putative class knew of, consented to, and/or participated in the conduct alleged in the Amended Complaint, including, but not limited to, voluntarily using vehicles equipped with Samsara Dash Cams with knowledge that their alleged biometric identifiers and/or biometric information were being collected.

19. The claims of Plaintiffs and/or members of the putative class are barred, in whole or in part, because Samsara's actions were not the actual or proximate cause of any loss suffered by Plaintiffs and/or members of the putative class.

20. The claims of Plaintiffs and/or members of the putative class are barred, in whole or in part, because all or part of the damages alleged in the Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiffs and/or members of the putative class and/or persons who acted on their behalf), for whose conduct Samsara is not legally responsible, which intervened between the alleged acts and/or omissions of Samsara and the alleged damages of Plaintiffs and/or members of the putative class.

21. The claims of Plaintiffs and/or members of the putative class are barred, in whole or in part, because all or part of the damages alleged in the Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiff and/or members of the putative class and/or persons who acted on their behalf), for whose conduct Samsara is not legally responsible. Therefore, if Plaintiff and/or members of the putative class are found to be entitled to recover any of the alleged damages, Samsara's share thereof must be apportioned or reduced to the extent that such damages are attributable to persons or entities other than Samsara.

22. The claims of Plaintiffs and/or members of the putative class are barred, in whole or in part, because any purported injury is not fairly traceable to the alleged conduct of Samsara, and so the relief sought would not redress any such injury.

23. The claims of Plaintiffs and the putative class are barred, in whole or in part, by their failure to mitigate any alleged damages.

24. Plaintiffs' claims and the putative class members' claims fail, in whole or in part, because they have not sustained any cognizable injury or damages. Plaintiffs do not allege any injury beyond a technical statutory violation.

25. Plaintiffs' claims and the putative class members' claims are barred, in whole or in part, because any recovery from Samsara would result in Plaintiffs being unjustly enriched to the extent that Plaintiffs and putative class members have already recovered for their alleged injuries in settlements with other defendants for the same underlying claims.

26. Samsara fully reserves its rights to amend and/or supplement the foregoing defenses, including but not limited to as investigation and discovery proceeds.

61

Dated: November 17, 2023

Respectfully submitted,

SAMSARA INC.

David C. Layden
Elena M. Olivieri
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
DLayden@jenner.com
EOlivieri@jenner.com

By: /s/ David C. Layden           
    One of its attorneys

**CERTIFICATE OF SERVICE**

I certify that on November 17, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

By: /s/ David C. Layden